**UNITED STATES of America, Appellee,**

v.

**Jorge FELIZ–CORDERO and Alexander Feliz–Encarnacion, Defendants–Appellants.**

Nos. 1399, 1412, Dockets 88–1146, 88–1147.

United States Court of Appeals, Second Circuit.

Argued Aug. 19, 1988.

Decided Oct. 11, 1988.

Lynne F. Stewart, New York City, for defendant-appellant Feliz–Cordero.

Philip Katowitz, Brooklyn, N.Y., for defendant-appellant Feliz–Encarnacion.

Leslie R. Caldwell, Asst. U.S. Atty., E.D. N.Y., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., David C. James, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for appellee.

Before WINTER and MINER, Circuit Judges, and BILLINGS, District Judge.*

BILLINGS, District Judge:

Defendant-appellant Jorge Feliz–Cordero ("Cordero") and defendant-appellant Alexander Feliz–Encarnacion ("Encarnacion") each appeal from a judgment of conviction entered in the United States District Court for the Eastern District of New York. After jury trial before Judge Raymond Dearie, District Judge, defendants were each convicted of one count of conspiracy to possess cocaine base with intent to distribute in violation of 21 U.S.C. § 846 (1982); two counts of possession of cocaine base with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii) (1982 & Supp. IV 1986); one count of distribution of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii); and one count of carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. §§ 924(c)(1) and 924(c)(2) (1988).

Defendant Feliz–Cordero was sentenced to a seven year prison term on each of the conspiracy, possession, and distribution counts, to run concurrently, and a consecutive five year sentence on the firearm count. Defendant Feliz–Encarnacion was sentenced to a five year prison term on

each of the first four counts, to run concurrently, and a consecutive five year sentence on the firearm count.

On appeal, defendants contend that the trial court erred in failing to suppress physical evidence seized as a result of a search warrant which defendants contend was issued absent probable cause. Defendants also contend on appeal that the evidence was insufficient to sustain a conviction on the firearm count. 18 U.S.C. § 924(c)(1). We affirm the district court's denial of defendants' motion to suppress physical evidence and reverse defendants' respective convictions on the firearm count.

## BACKGROUND

On February 13, 1987, Bureau of Alcohol, Tobacco and Firearms ("ATF") Special Agent Ravelo arranged to purchase 200 vials of "crack" (cocaine base) from Pedro Muniz and Fernando Ubiles. Agent Ravelo drove Muniz and Ubiles to 144 Wyckoff Avenue, Brooklyn, New York and waited outside the building while Muniz entered and went to Apartment 3, defendant Cordero's residence. Cordero was not there, so Muniz went upstairs to Apartment 5, defendant Encarnacion's residence. Muniz had been to both apartments previously and had seen both defendants at that location (the defendants are brothers). On this occasion, defendant Encarnacion was present in his apartment and Muniz obtained 150 vials of "crack" from him. Muniz returned to Agent Ravelo's automobile, showed Ravelo the vials, and handed the vials to Ubiles. Ravelo then drove Muniz to another location where Muniz was to procure the additional 150 vials of "crack". Muniz exited the automobile and Ravelo lost contact with him. Agent Ravelo arrested Ubiles and seized the 150 vials of "crack".

Ravelo returned to the Wyckoff Avenue address where he met defendant Encarnacion outside the building. Ravelo asked Encarnacion if he had seen Muniz because he wanted to obtain the additional 50 vials

* Hon. Franklin S. Billings, Jr., U.S. District Judge for the District of Vermont, sitting by designa-tion.

of "crack". Encarnacion told Ravelo he was in the process of cooking "crack" and to return in 30 minutes and the 50 vials would then be ready for sale. Ravelo continued to search for Muniz, found him a few minutes later, and arrested him. Muniz quickly agreed to cooperate and was debriefed by Agent Ravelo's partner, ATF Special Agent Raffa. During the debriefing Muniz told the agents he obtained the "crack" from Apartment 6 on the third floor of 144 Wyckoff Avenue, that the apartment was directly above defendant Cordero's apartment, and had a metal door with a suitcase-style handle.

Muniz was outfitted with a recording transmitter. While wearing the transmitter, Muniz first went to his own apartment. As he was leaving his apartment building, Muniz unexpectedly met both defendants on the street. Part of the conversation between Muniz and Cordero was monitored. It concerned Muniz's debt for the 150 vials of "crack" he had obtained in the morning. Muniz stated he had not gotten the money yet and asked the defendants to loan him a weapon so that he could obtain the money. The defendants refused Muniz's request. All of the parties, however, agreed to meet later at 144 Wyckoff Avenue. Muniz, still wearing the transmitter, returned to Apartment 3 where both defendants were waiting. During this monitored conversation, the prior "crack" transaction was discussed, including the money owed to defendant Cordero. They also discussed the rising price of "crack" and the gun Cordero kept. Cordero again refused that request to loan him the gun.

On February 14, 1987, based on information obtained from Muniz, the ATF agent observations, and the taped conversations, Agent Raffa swore to an affidavit in support of a search warrant for Apartments 3 and 6. Subsequently, on February 17, 1987, after discovering that Apartment 5 was the only one directly above Cordero's apartment, Agent Raffa swore to an amended affidavit in support of a search warrant for Apartment 5 rather than Apartment 6.

On February 15, 1987, Muniz returned to Apartment 3, met defendant Encarnacion, and gave him $200.00. On February 16, 1987, Muniz telephoned defendant Cordero and promised to pay his debt on the following day. On February 18, 1987, ATF agents and New York City Police officers executed the search warrant on Apartments 3 and 5. Both defendants were then arrested. In Apartment 3 the agents found, among other things, a small quantity of cocaine, drug records, approximately $11,000 in cash, a beeper, and, in a bedroom dresser drawer, a .38 caliber Smith & Wesson revolver loaded with 5 rounds of ammunition, and additional rounds of ammunition.

In Apartment 5 the agents found, among other things, cocaine and cocaine base, plastic vials, a scale, a hot plate, strainers, straight edge razor blades, and a quantity of chemicals used to cut cocaine. The agents seized all of the items found.

## DISCUSSION

### I. Search Warrant

Defendants Cordero and Encarnacion contend that the search warrant was issued without probable cause because the supporting affidavits were based on unreliable and uncorroborated information provided by Pedro Muniz, a government informant. In determining whether a search warrant is supported by probable cause, a flexible, totality-of-the-circumstances standard is employed. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In *Gates*, the Supreme Court stated:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

*Id.* at 238–39, 103 S.Ct. at 2332 (citations omitted). A magistrate's finding of probable cause is to be given substantial deference by a reviewing court. *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983).

Although conceding that *Gates* requires an examination of the totality of the circumstances, defendants contend that the so-called *Aguilar–Spinelli* test, requiring an examination of the veracity of an informant and the basis of his knowledge, continues to be relevant to an evaluation of the totality of the circumstances. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed. 2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). While "an informant's 'veracity,' 'reliability,' and 'basis of knowledge' are all highly relevant in determining the value of his report," the totality-of-the-circumstances analysis "permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip." *Gates*, 462 U.S. at 230, 234, 103 S.Ct. at 2328, 2330.

■ In this case, the affidavits submitted in support of the search warrant contained the following information:

1. ATF agent Ravelo accompanied Muniz to 144 Wyckoff Avenue. Muniz exited the building with 150 vials of "crack".

2. Muniz indicated he had obtained the "crack" from a third floor apartment which had a suitcase-style handle and which was directly above Apartment 3. Apartment 5 is directly above Apartment 3 and is the only apartment on the third floor that has a suitcase-type door handle.

3. Muniz told ATF agents he had observed cocaine being processed in the same third floor apartment and that the processing equipment included burners, lights for drying, and "crack" vials.

4. While wired with a recording device, Muniz spoke with defendant Cordero outside the apartment building concerning the sale of 150 vials of "crack" to Agent Ravelo.

5. About 15 minutes later, Muniz went into Apartment 3. In a recorded conversation, Muniz discussed the previous "crack" sale with defendant Cordero, told Cordero that the purchaser had not paid for the "crack", and asked Cordero to lend him the gun Cordero kept in the apartment. Cordero told Muniz he could not lend him his gun.

We find that based on a common-sense evaluation of all the information contained in the affidavit, the magistrate could have concluded that there was a fair probability that narcotics and drug equipment were located in Apartments 3 and 5. Therefore, because the search warrant was supported by probable cause, the trial court was without error in refusing to suppress the seized physical evidence.

## II. Firearm Convictions

Defendants Cordero and Encarnacion claim that the evidence was insufficient to establish that they carried or used a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1).[1]

### A. "Carry" a Firearm

■ Neither the legislative history of section 924(c)(1) nor case law in this circuit suggest that the term "carry" should be construed as having any meaning beyond its literal meaning. Therefore, a person cannot be said to "carry" a firearm without at least a showing that the gun is within reach during the commission of the drug offense. *See United States v. Brockington*, 849 F.2d 872 (4th Cir.1988) (fact that defendant in taxi cab had fully loaded automatic pistol under his seat and heroin and

1. 18 U.S.C. § 924(c)(1) provides:
Whoever, during and in relation to any crime of violence or drug trafficking crime, including a crime of violence or drug trafficking crime, which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device, for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years. . . .

cocaine on his person sufficient to convict under section 924(c)(1)). Since the weapon in the present case was not within reach of either defendant, conviction here can be predicated only on the provision of section 924(c)(1) relating to "uses" a firearm.

### B. *"Uses" a Firearm*

In 1984, Congress revised section 924(c). Prior to 1984, the statute had provided that it was a crime to carry a firearm "during the commission of any felony...." 18 U.S. C. § 924(c)(2) (1982). The 1984 amendment established as the predicate offense "any crime of violence" instead of "any felony" and substituted the phrase "during and in relation to" for the word "during". In 1986, the statute was again amended to add "drug trafficking crime" as a predicate offense.

The legislative history of the 1984 amendment indicates that the "in relation to" language was intended to make explicit that a person could not be prosecuted under section 924(c) for possessing a firearm during the commission of an entirely unrelated crime. S.Rep. No. 225, 98th Cong., 2d Sess. 1, 314 n. 10 (1983), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3492 n. 10. Thus, section 924(c) requires more than mere possession of a firearm. Rather, there must be some relation or connection between the firearm and the underlying crime. The necessary relation or connection between possession of a firearm and the underlying crime is established "if from the circumstances or otherwise it could be found that the defendant *intended to use the gun* if a contingency arose or to make his escape." *Id.* (emphasis added).

■ Based on the foregoing analysis, in order for possession of a firearm to come within the "uses" provision of section 924(c), one of the following is required: i) Proof of a transaction in which the circumstances surrounding the presence of a firearm suggest that the possessor of the firearm intended to have it available for possible use during the transaction; or ii) The circumstances surrounding the presence of a firearm in a place where drug transac-

tions take place suggest that it was strategically located so as to be quickly and easily available for use during such a transaction.

■ In the present case, the presence of a firearm in a dresser drawer does not meet either of the requirements set out above. On the evidence presented, there is no basis to conclude that the gun would have been quickly accessible if needed. Rather, under the circumstances of this case, the intent to use the firearm must be presumed from the fact that a loaded gun was found in the same room as drug paraphernalia during the course of a search pursuant to a warrant. This is not sufficient evidence to sustain a conviction, even in light of our recognition of the frequent connection between firearms and narcotics trafficking.

In arguing that the firearm convictions should be affirmed, the government relies heavily on *United States v. Grant,* 545 F.2d 1309 (2d Cir.1976), *cert. denied,* 429 U.S. 1103, 97 S.Ct. 1130, 51 L.Ed.2d 554 (1977). Application of the test set out above to the facts of *Grant* shows that it is clearly distinguishable from the evidence in the present case. In *Grant,* it was apparent from the circumstances surrounding the presence of the firearms that the drug dealers intended to use the guns. The evidence established that there were many weapons strategically located, within easy access, in a "veritable fortress" in which security of the drug operation was the prime concern. *Id.* at 1310–13.

Based on the foregoing, the evidence was insufficient to establish that defendants carried or used a firearm during and in relation to a drug trafficking crime. Therefore, defendants Cordero's and Encarnacion's respective convictions for violation of 18 U.S.C. § 924 are REVERSED.

### CONCLUSION

The District Court's denial of defendants' motion to suppress physical evidence is AFFIRMED. Defendants' respective convic-

tions for violation of 18 U.S.C. § 924(c)(1) are REVERSED.