902 F.2d 1570
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Larry D. CHALMERS, Defendant-Appellant.
 No. 89-5925.
 United States Court of Appeals, Sixth Circuit.
 May 21, 1990.
 
 Before KEITH and MILBURN, Circuit Judges, and GEORGE E. WOODS, District Judge.*
 PER CURIAM:
 
 
 1
 Defendant Larry D. Chalmers ("Chalmers") appeals from the district court's June 28, 1989 judgment and conviction order for possession of marijuana with intent to distribute and use of a firearm during a drug trafficking crime. Chalmers argues that the arresting officers seized evidence during an unlawful search and that the guilty verdict was against the weight of the evidence. For the reasons set forth below, we AFFIRM the judgment of the district court.
 
 I.
 A.
 
 2
 On the morning of June 21, 1988, a reliable informant gave Officer J.R. Holland and Detective J.A. Arnold of the Shelby County Metro Narcotics Unit information regarding a drug trafficking enterprise. Later that day, an affidavit for a search warrant was presented to Judge Horace O. Pierotti of the General Sessions Court, Division 12. The affidavit stated that Holland and Arnold had reason to believe a "M.B. mid 20's, 5'9", medium build, dark complexion" is in possession of cocaine. The belief was based on the following:
 
 
 3
 On June 21, 1988 the affiants talked with a reliable informant of Memphis, Shelby County, Tennessee who has given the affiants and other officers of the Metro Narcotics Unit other information in the past which has been found to be true and correct and which has resulted in drug seizures and arrests. This reliable informant stated that within the past five days of June 21, 1988, this reliable informant has been inside [815 Pearce Street] and has seen the above described person storing and selling cocaine from this residence.
 
 
 4
 Affidavit Exhibit 1 to Defense Brief, United States v. Chalmers, No. 88-20176-H (W.D.Tenn. filed Sept. 28, 1989) (motion to suppress evidence). Judge Pierotti issued a search warrant authorizing a search of 815 Pearce Street, which included all automobiles and out buildings located on the premises.
 
 
 5
 On June 24, 1988, Holland, Arnold and six other officers of Metro Narcotics went to 815 Pearce to execute the search warrant. When the officers forcibly entered the residence, Chalmers was seen in the hallway. He was seized as he darted back into the bedroom. He was arrested and secured in the living room. Janice Fondren ("Fondren"), who was detained as she was leaving the premises, also was taken into custody. In the only bedroom, the officers found a beeper and a fully loaded .44 caliber Charter Arms revolver on the headboard shelf. On the same shelf and next to the gun, the officers found two clear bags. One bag contained two small bags of cocaine in the salt form, and another bag contained cocaine base in the form of crack cocaine. A window with security bars on the inside and a screen on the outside was located to the immediate left of the gun and the drugs. A 2.5 inch square hole had been cut out of the screen. A fully loaded .38 caliber Smith and Wesson revolver was found under the left corner of the bed, and a loaded 12 gauge shotgun was found under the center of the bed.
 
 
 6
 Numerous rings and watches were found in the bedroom. Also found in the bedroom were 96 packets containing marijuana, as well as a set of scales and a sifter normally associated with cocaine distribution. In the living room, five packets containing 56.7 grams of cocaine and another bag containing 224 grams of marijuana were recovered. One thousand dollars was found rolled up behind the sofa. In the kitchen, the officers found marijuana, a set of scales and bags commonly used in packaging marijuana and cocaine. All of the drugs were taken into custody by the Metro Narcotics Officers. Chalmers and Fondren were arrested and transported to the Shelby County Jail.
 
 B.
 
 7
 On June 30, 1988, a federal grand jury issued a four-count indictment charging Chalmers with the following crimes:[1]
 
 
 8
 Count I--possession of cocaine base with intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1);
 
 
 9
 Count II--possession of cocaine with intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1);
 
 
 10
 Count III--possession of marijuana with intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1); and
 
 
 11
 Count IV--use of firearms during or in relation to a drug trafficking crime in violation of 18 U.S.C. Sec. 924(c).
 
 
 12
 On July 27, 1988, Chalmers was arraigned on a plea of not guilty. On September 23, 1989, Chalmers filed a motion to suppress the evidence seized during the search. He contended that the evidence was seized pursuant to a state search warrant which failed to set forth sufficient probable cause. He also maintained that the search warrant was not executed in good faith. A hearing on the motion was held on December 21, 1989. The district court took the issue under advisement.
 
 
 13
 On April 11, 1989, the district court denied Chalmers' motion to suppress and a jury trial commenced. On April 14, 1989, the jury returned its verdict of guilty on Counts III and IV and not guilty on Counts I and II. On June 28, 1989, Chalmers was sentenced to two consecutive terms--twelve months imprisonment on Count III and five years imprisonment on Count IV. On July 19, 1989, Chalmers filed a timely notice of appeal.
 
 II.
 A.
 
 14
 Chalmers argues that the affidavit supporting the search warrant did not establish probable cause under the totality of circumstances test set out in Illinois v. Gates, 462 U.S. 213 (1983). He contends that: (1) the requisite indicia of reliability were absent because the information was provided by a paid informant; (2) no corroborating information was supplied; (3) the affiants were inexperienced; (4) the affidavit included boilerplate language; (5) the affiants intentionally excluded information; and (6) the information was stale. Finding Chalmers' claims unpersuasive, we conclude that the affidavit provides ample information from which the magistrate properly determined probable cause.
 
 
 15
 As a reviewing court, we must determine whether the issuing magistrate had a substantial basis for concluding that probable cause existed. Gates, 462 U.S. at 239 (1983). When considering the sufficiency of a search warrant, we afford great deference to the magistrate's probable cause determination. See United States v. McManus, 719 F.2d 1395, 1398 (6th Cir.1983).
 
 
 16
 Viewing the totality of circumstances in the present case, the agents' affidavit is sufficient to establish probable cause. The Eighth Circuit held in United States v. King, 567 F.2d 785 (8th Cir.1977), cert. denied, 435 U.S. 945 (1978), that the use of a paid informant, who, despite his status as a narcotics user, had been reliable in the past and played a vital role in the narcotics sales that led to the search and arrest, did not taint the government's case. Id. at 789. The trustworthiness of an informant may be satisfied by a recital of the prior occasions on which the informant proved credible. See United States v. Seta, 669 F.2d 400, 403 (6th Cir.1982) (per curiam). The averment in an affidavit that an informant "had furnished information which has led to several arrests and convictions" is sufficient to establish the credibility and reliability of an informant. Id. at 403; see United States v. Dudek, 560 F.2d 1288, 1292 (6th Cir.1977), cert. denied, 434 U.S. 1037 (1978). Moreover, if an informant has "personally observed large quantities of drugs in defendant's apartment," then there is sufficient knowledge and basis for his testimony. Seta, 669 F.2d at 403. In the present case, the affidavit states that "the informant has given information in the past which has been found to be correct and which resulted in drug seizures and arrests." We find the agents' affidavit supports the magistrate's probable cause finding. Therefore, Chalmers' challenge to the search warrant fails.
 
 
 17
 Since the affidavit is sufficient to establish probable cause, Chalmers' challenge based on the need for corroborating facts, the inexperience of the affiants, and the use of "boilerplate language" in the affidavit is without merit. That the affiants did not provide a description of the premises, the number of the doors and the method of doing business does not negate a finding of probable cause. There is no need to include all of the details from an informant in the affidavit. See Seta, 669 F.2d at 403.
 
 
 18
 Chalmers relies on Franks v. Delaware, 438 U.S. 154 (1978), to support the proposition that where the defendant makes a preliminary substantial showing that a false statement was made knowingly and intentionally, or with reckless disregard for the truth, the fourth amendment requires a hearing at the defendant's request. Id. at 155. Franks has been extended to material omissions of information. United States v. Martin, 615 F.2d 318, 329 (5th Cir.1980). Chalmers contends that the affidavit's failure to include a thorough description of the house and its contents constitutes a fourth amendment violation. However, Franks merely requires a hearing to determine whether the false statement or omission negates the finding of probable cause. See Franks, 438 U.S. at 156. In the case at bar, the evidentiary hearing on the motion to suppress satisfied the hearing requirement. An affidavit need only include enough details to establish probable cause and any existing information that would negate a finding of probable cause (if such information exists). See Seta, 669 F.2d at 403. If the affiant includes every detail provided by the informant, the affiant runs the risk of exposing the informant's identity.
 
 
 19
 Likewise, we find little merit in Chalmer's claim of staleness. When an affidavit recites activity of a continuous nature, time is of less significance. See United States v. Henson, 848 F.2d 1374, 1382 (6th Cir.1988), cert. denied, 109 S.Ct. 784 (1989). In the case at bar, the affidavit states and the evidence shows that Chalmers was storing and selling illegal drugs his residence on an on-going basis. We conclude that even assuming the informant saw the activity five days prior to the issuance of the warrant, the information was not stale; and therefore, it did not negate a finding of probable cause. Reading the affidavit as a whole, we do not find the errors asserted by Chalmers to warrant reversal.
 
 B.
 
 20
 Chalmers contends that there was insufficient evidence to support his conviction for the use of a firearm during and in relation to a drug trafficking crime. On appeal, our standard of review is "whether, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (original emphasis).
 
 
 21
 In United States v. Henry, 878 F.2d 937 (6th Cir.1989), we adopted the "fortress theory" which holds that "if it reasonably appears that the firearms found on the premises controlled or owned by a defendant and in his actual or constructive possession are to be used to protect the drugs or otherwise facilitate a drug transaction, then such firearms are used 'during and in relation to' a drug trafficking crime." Id. at 944 (citing United States v. Matra, 841 F.2d 837, 843 (8th Cir.1988); United States v. LaGuardia, 774 F.2d 317, 321 (8th Cir.1985)). In United States v. Acosta-Cazares, 878 F.2d 945 (6th Cir.), cert. denied, 110 S.Ct. 255 (1989), we applied the fortress theory and concluded that under the statute, "uses" does not mean actual brandishment or display. Id. at 951. If the firearms were "an integral part of [the defendant's] criminal undertaking and [their] availability increased the likelihood that the criminal undertaking would succeed," then they were used within the meaning of 18 U.S.C. Sec. 924(c). Id. (citing Matra, 841 F.2d at 843); accord United State v. Feliz-Cordero, 859 F.2d 250, 254 (2d. Cir.1988) ("[S]ection 924(c) requires more than mere possession of a firearm. Rather, there must be some relation or connection between the firearm and the underlying crime. The necessary relation or connection between possession of a firearm and the underlying crime is established 'if from the circumstances or otherwise it could be found that the defendant intended to use the gun if a contingency arose or to make his escape.' ") (emphasis added).
 
 
 22
 The Second Circuit formulated a two prong test to determine whether the possession of the firearm comes within the "uses" provision of section 924(c). One of the following is required:
 
 
 23
 (1) Proof of a transaction in which the circumstances surrounding the presence of a firearm suggest that the possessor of a firearm intended to have it available for possible use during the transaction; or
 
 
 24
 (2) The circumstances surrounding the presence of a firearm in a place where drug transactions take place suggest that it was strategically located so as to be quickly and easily available for use during such a transaction.
 
 
 25
 United States v. Feliz-Cordero, 859 F.2d at 254. The second prong is satisfied in the instant case. One fully loaded gun was found just inches away from one bag of cocaine and one bag of crack. Another gun was found under the bed directly beneath the drugs. The window in which the hole was cut in the screen was located immediately to the left of the drugs. A logical inference that can be drawn from these facts is that Chalmers was dealing drugs from his bedroom and was able to pass the drugs outside through the hole in the screen. If any problem resulted in his drug transactions, the weapons were easily accessible to protect him and his drugs. As if two pistols were not enough for his protection, he had the added assurance of a 12 gauge shotgun under the bed within easy reach.
 
 
 26
 The fortress theory articulated in Acosta-Cazares is applicable to the facts in this case. "Just as weapons are kept at the ready to protect military installations against potential enemy attack, so too may weapons be kept at the ready to protect a drug house, thereby safeguarding and facilitating illegal drug transactions." Acosta-Cazares, 878 F.2d at 951. Therefore, we find sufficient evidence exists to support Chalmers' conviction for using firearms during the commission of a drug trafficking crime.
 
 III.
 
 27
 Viewing the totality of circumstances in the present case, the district court properly found that the issuance of the search warrant was based upon probable cause. Moreover, we find the evidence supports a reasonable inference that the firearms were used in connection with the commission of a drug trafficking crime. The location of the guns and their proximity to the drugs present a classic "fortress theory" scenario. See Henry, 878 F.2d at 944; Acosta-Cazares, 878 F.2d at 951. We, therefore, AFFIRM the judgment and commitment order of the Honorable Odell Horton, United States District Judge for the Western District of Tennessee.
 
 
 
 *
 The Honorable George E. Woods, United States District Judge for the Eastern District of Michigan, was sitting by designation
 
 
 [1]
 Although Fondren was charged along with Chalmers, the jury acquitted her of all charges