968 F.2d 1216
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Theodore Alan DONALDSON, Defendant-Appellant.
 No. 91-1965.
 United States Court of Appeals, Sixth Circuit.
 June 23, 1992.
 
 Before RYAN, BOGGS and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Theodore Donaldson appeals his convictions for use of a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c), and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He contends that the government failed to demonstrate sufficient evidence to support these convictions. We affirm the judgment below.
 
 
 2
 * On January 8, 1991, Stan Brue, an undercover agent with the Bureau of Alcohol, Tobacco, and Firearms, went to a house at 50 West Hollywood, in Detroit, Michigan. He met Mr. Donaldson, who had a felony record, at the door of the house. The two men went into the living room, where Mr. Donaldson agreed to sell Agent Brue a quarter ounce of crack for $280. Mr. Donaldson then asked Christopher Loyd to get the quarter ounce from the kitchen. Mr. Loyd went to the kitchen and returned with two small bags of crack, which Mr. Donaldson then sold to Agent Brue. Agent Brue, who was presenting himself as someone maintaining a crack house, then told Mr. Donaldson that he "wanted him to work" the house for him. He asked if Mr. Donaldson had a gun that he could use for protection, in the event that he took this proposed job. Mr. Donaldson responded that he had a .357 pistol in the house, but when Agent Brue suggested that he take the gun out of the house, Mr. Donaldson replied that "it would be bad for business if the gun left the residence."
 
 
 3
 Soon after Agent Brue left the residence, a team of Alcohol, Tobacco, and Firearms agents executed a search warrant there. On the coffee table in the living room, the agents found the $280 Agent Brue used to buy the crack, as well as Mr. Donaldson's driver's registration. In the kitchen, the agents found ninety-eight grams of crack, a triple-beam scale, and plastic baggies. In the northwest bedroom, they found a loaded .357 revolver. After being read his Miranda rights, Mr. Donaldson told Agent Joseph Secrete that the drugs and the gun belonged to him. However, he stated that he had not used the gun for at least two weeks.
 
 
 4
 On January 22, 1991, a grand jury in the Eastern District of Michigan indicted Mr. Donaldson on five counts: (I) distribution of more than five grams of crack, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii); (II) possession with intent to distribute more than fifty grams of crack, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii); (III) use of a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c); (IV) possession with intent to distribute more than five grams of crack, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and, (V) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Mr. Loyd was charged only on count IV, and was a fugitive at the time of trial.
 
 
 5
 Before trial, Mr. Donaldson pled guilty to count I. At the close of the government's case, he moved for acquittal under Fed.R.Crim.P. 29 on counts III and V, but this motion was denied. On April 10, 1991, a jury found Mr. Donaldson guilty on counts II, III, and V. On August 7, 1991, the district court sentenced Mr. Donaldson to 236 months on count I, 120 months on count II, and 60 months on count V, with all sentences to run concurrently. The district court also sentenced him to 60 months on count III, to run consecutively to the other three counts. This timely appeal followed.
 
 II
 
 6
 Mr. Donaldson argues that the district court should have dismissed count III, charging him with using a firearm during a drug trafficking offense. He contends that this count should have been dismissed because no strong connection was shown between drugs and the gun. He notes that five or six other people were present in the house, that the gun was not found near the drugs, and that no evidence linked him to ownership, possession, or occupancy of the house. Mr. Donaldson also contends that a comparison of the house to a fortress, like that adopted in United States v. Henry, 878 F.2d 937 (6th Cir.1989), is inappropriate in this case. He reasons that even if he knew the gun was present, the government presented no evidence that he used the gun to protect his drugs. Furthermore, if he were using the gun to support his drug business, he would not have kept it in a bedroom that contained no other evidence of drug dealing.
 
 
 7
 Mr. Donaldson also notes that at one point during the trial, the district court stated that the evidence failed to demonstrate "either actual possession--and by this, I'm talking about physical possession--either actual or constructive possession." Because count V of the indictment charged Mr. Donaldson with "possession of a firearm," and the court stated that he had no such possession, he argues that the court should have dismissed this count.
 
 
 8
 We reject these arguments. "[T]he test to be applied by a trial court in determining a defendant's motion for acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure is taking the evidence and inferences most favorably to the government, if there is such evidence therefrom to conclude that a reasonable mind might fairly find guilt beyond a reasonable doubt, the issue is for the jury." United States v. Overmyer, 867 F.2d 937, 938 (6th Cir.), cert. denied, 493 U.S. 813, 110 S.Ct. 60 (1989). "An appellate court, in reviewing a trial court's decision regarding a Rule 29 motion, applies the same principles to the record it has before it." Ibid. Having reviewed the record, we hold that the evidence in this case clearly meets this standard.
 
 
 9
 Recently, this court discussed the following test for cases involving 18 U.S.C. § 924(c), which prohibits use of a firearm during a drug offense:
 
 
 10
 In cases involving firearms found on premises under the control of a drug offense offender, the courts have developed a "fortress analogy" theory, which holds that if it reasonably appears that the firearms found on the premises controlled or owned by a defendant and in his actual or constructive possession are to be used to protect the drugs or otherwise facilitate a drug transaction, then such firearms are used "during and in relation to" a drug trafficking crime.
 
 
 11
 United States v. Henry, 878 F.2d 937, 944 (6th Cir.1989); see also United States v. Feliz-Cordero, 859 F.2d 250, 254 (2d Cir.1988).
 
 
 12
 In this case, it reasonably appears that the gun was to be used to protect Mr. Donaldson's drug supply. By pleading guilty to the distribution charge, Mr. Donaldson admitted selling crack from 50 West Hollywood. Furthermore, the evidence indicates that Mr. Donaldson was in charge of the house. He met Agent Brue at the door, he sold him more than five grams of crack, he directed Mr. Loyd to retrieve it from the kitchen, and he stated that it would be "bad for business" if the gun left the house. These facts support a conclusion that Mr. Donaldson's gun supported his drug dealing. "Having a loaded gun present in the same area where transactions took place makes it more likely that the gun would have been available if needed, and hence that the defendant intended to use it in an emergency." United States v. Lyman, 892 F.2d 751, 754 (8th Cir.1989), cert. denied, 111 S.Ct. 45 (1990) (footnote omitted). In Lyman, the Eighth Circuit also recognized that "[t]he fact that a gun is located in a room that is not the center of drug transactions does not preclude the possibility that a drug dealer intended to use it to support his operations.... The key is always whether the placement of the gun or guns suggests they would be quickly available for use in an emergency." Id. at 754 n. 4. Furthermore, "even if a firearm is not instantly available or exclusively dedicated to the narcotics trade, a sufficient nexus may exist to support a finding that it was 'used' during and in relation to a drug trafficking crime." United States v. Hadfield, 918 F.2d 987, 998 (1st Cir.1990), cert. denied, 111 S.Ct. 2062 (1991).
 
 
 13
 We also affirm Mr. Donaldson's conviction for being a felon in possession of a firearm. While he did not have actual possession of the gun, we find that he had constructive possession.
 
 
 14
 Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others. Both actual possession and constructive possession may be proved by direct or circumstantial evidence. It is not necessary that such evidence remove every reasonable hypothesis except that of guilt.
 
 
 15
 United States v. Craven, 478 F.2d 1329, 1333 (6th Cir.), cert. denied, 414 U.S. 866, 94 S.Ct. 54 (1973) (citations omitted). In this case, the facts demonstrate that Mr. Donaldson had constructive possession of the gun. In fact, notwithstanding its earlier comments, the district court ultimately reached this same conclusion, stating that "the statement allegedly made to Agent Brue that the defendant had the gun in the house at the time of the January 8th transaction and that it would be bad for business to let the gun out of the house also indicates an indicia of ownership sufficient to constitute constructive possession." We agree with this reasoning.
 
 III
 
 16
 The government presented sufficient evidence to support the firearm convictions below, and we find no evidence of error. Accordingly, Mr. Donaldson's convictions are AFFIRMED.