104 F.3d 354
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES OF AMERICA, Appellee,
v.
Christopher COLLINS, Defendant,
Luqman Salaam, Defendant-Appellant.
 No. 96-1203.
 United States Court of Appeals, Second Circuit.
 Nov. 12, 1996.
 
 APPEARING FOR APPELLANT: Donald D. DuBoulay, New York, N.Y.
 APPEARING FOR APPELLEE:Ronald White, Assistant United States Attorney, Eastern District of New York, Brooklyn, N.Y.
 Before MESKILL, CALABRESI and CABRANES, Circuit Judges.
 
 
 1
 This cause came on to be heard on the transcript of record from the United States District Court for the Eastern District of New York and was argued.
 
 
 2
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED.
 
 
 3
 The defendant, Luqman Salaam, was arrested on May 19, 1995, following a high-speed chase in which police pursued a vehicle, allegedly driven by Salaam, that was observed leaving the vicinity of an armed bank robbery in Queens, New York. Suspecting that the car's occupants were involved in the robbery, the police pursued the car for some time before the vehicle lost control and crashed. At this point, two men fled from the vehicle. One of the men, Christopher Collins, was apprehended; the other escaped and remains unidentified. Salaam stayed in the car and was taken into police custody.
 
 
 4
 An ensuing search of the car's passenger compartment produced various items, including two handguns, linking the car's occupants to the robbery, as well as a souvenir baseball bat that the Government alleges Salaam, a paraplegic since 1980, employed to drive the car. A leather bag was also discovered, lying, partially unzipped, approximately five feet from the vehicle's passenger side. The bag contained a loaded handgun and various items belonging to the defendant, including his catheter, which, due to his paralysis, he needed to employ several times each day.
 
 
 5
 Following a jury trial in the District Court for the Eastern District of New York for his alleged role as the getaway driver in the armed bank robbery, the defendant was convicted of conspiracy to commit bank robbery in violation of 18 U.S.C. § 371 and armed bank robbery in violation of 18 U.S.C. § 2113(a), (d). The Government had also brought two charges against the defendant pertaining to the weapon discovered in the leather bag, and he was convicted on one of these charges--using or carrying a firearm in connection with a violent crime in violation of 18 U.S.C. § 924(c). He was subsequently sentenced to a prison term of 156 months, 96 months for the robbery and conspiracy convictions and 60 months for the § 924(c) firearms charge. In calculating this sentence, Judge Gleeson rejected the defendant's request for a downward departure based on his physical impairment. See U.S.S.G. § 5H1.4 (authorizing downward departure in cases where defendant suffers from "extraordinary physical impairment").
 
 
 6
 Following the trial, Salaam moved to set aside the jury's verdict on the § 924(c) charge. In a hearing before Judge Gleeson on March 12, 1996, the defendant argued that, in light of the Supreme Court's intervening decision in Bailey v. United States, 116 S.Ct. 501 (1995), the court's instructions to the jury on the § 924(c) charge were erroneous and, under the correct standard as defined by Bailey, there was insufficient evidence to convict him for using or carrying a firearm under § 924(c). The court rejected these arguments, and the defendant now appeals, asking this Court to set aside his conviction under § 924(c). He also challenges the district court's refusal at sentencing to make a downward departure based on his physical disability. We address these claims in turn.
 
 
 7
 The defendant argues, first, that Judge Gleeson's jury instruction on the § 924(c)(1) charge was erroneous in light of the Supreme Court's decision in Bailey. While we agree that the instruction is inconsistent with the holding in Bailey, we conclude that this error was harmless.
 
 
 8
 18 U.S.C. § 924(c)(1) provides for a mandatory five-year sentence in the event that a defendant "uses or carries a firearm" during the commission of "any crime of violence or drug trafficking crime." (Emphasis supplied.) In Bailey, the Supreme Court held that the "use" of a weapon, as that term is employed in § 924(c), has a more limited meaning than many courts had previously assigned to it. "Use" means more, the Court concluded, than "mere possession"; it requires a showing that a defendant engaged in the "active employment" of the weapon while committing the underlying crime. 116 S.Ct. at 506.
 
 
 9
 The Government concedes that Judge Gleeson's charge on the § 924(c)(1) charge was erroneous in light of Bailey insofar as it conflated the concepts of "using" and "carrying" a firearm and thereby failed to explain that a conviction for "use" requires a finding that the weapon was "actively employed." Such error, however, need not be prejudicial. In United States v. Pimentel, 83 F.3d 55 (2d Cir.1996), we found harmless error in a jury instruction similarly defective for conflating § 924(c)(1)'s "use" and "carrying" requirements, determining that "the language that was flawed with respect to 'using' properly described 'carrying,' and the evidence was ample to support a finding of carrying." Id. at 60 (emphasis supplied). We reached this conclusion notwithstanding the fact that the "carrying" instruction itself was flawed in that it did not include an express reference to "a requirement of immediate accessibility." Id. at 59.
 
 
 10
 Like the district court's instruction in Pimentel, we conclude that Judge Gleeson's charge in this case, although purporting to define both "using" and "carrying," in fact set out a legal standard that is consistent with the proper definition of "carrying." Judge Gleeson's instruction required the jury to find more than the mere possession of the firearm and, like the charge in Pimentel, adequately conveyed the idea that the defendant must have had immediate accessibility to the weapon while committing the underlying crime.
 
 
 11
 What remains of the defendant's challenge to his § 924(c)(1) conviction, then, is the question of whether the Government presented the jury with sufficient evidence to convict Salaam for "carrying" a weapon. In challenging the sufficiency of the evidence, the defendant must establish that "no rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." See, e.g., United States v. Taylor, 92 F.3d 1313, 1333 (2d Cir.1996) (internal quotation marks and citation omitted). The defendant fails to meet this burden in the instant case.
 
 
 12
 To support a conviction for "carrying" a weapon under § 924(c), we require that a weapon have been immediately accessible to the defendant--that it have been "within [the defendant's] reach" during the commission of the underlying crime. See United States v. Feliz-Cordero, 859 F.2d 250, 253 (2d Cir.1988). The defendant cites a series of cases in which this Court has vacated convictions for a lack of evidence placing the weapon at issue in such a position of accessibility. The evidence in these cases, however, suggested the relevant weapon's inaccessibility, see, e.g., United States v. Santos, 84 F.3d 43, 47 (2d Cir.1996) (per curiam) (weapon " 'hidden in the oven in the kitchen that was across a hallway from the living room' where the transaction took place"), modified, 95 F.3d 116 (1996); Feliz-Cordero, 859 F.2d at 253-54 (weapon in bedroom dresser drawer out of defendant's reach during commission of underlying crime), or failed to include any evidence that the defendant knew of a weapon's presence, see United States v. Giraldo, 80 F.3d 667, 677 (2d Cir.) (finding "no evidence from which the jury could reasonably infer that [the defendant] knew there was a gun in the car"), cert. denied, 117 S.Ct. 135 (1996). Here, in contrast, the location of the leather bag after the accident suggests that it had been loose in the car's passenger compartment during the police chase. In addition, the jury had before it evidence that the bag belonged to the defendant, that it contained an item, his catheter, the use of which he regularly required, and that the bag was partially unzipped when found. On these facts, we cannot conclude that a reasonable juror could not have found, beyond a reasonable doubt, that the weapon had been immediately accessible to the defendant.
 
 
 13
 Finally, we find no merit in the defendant's challenge to Judge Gleeson's failure to grant a downward departure in calculating his sentence. A district court's failure to grant a request for a downward departure in Guidelines sentencing is normally not subject to appeal. See, e.g., United States v. Brown, 1996 WL 593810, at * 2 (2d Cir.1996) (per curiam); United States v. Sharpsteen, 913 F.2d 59, 62 (2d Cir.1990). While this rule is not without narrow exceptions, the defendant fails to identify any such exception applicable in the instant case.
 
 
 14
 Accordingly, the defendant's conviction under § 924(c)(1) and the sentence imposed by the district court are affirmed.