**NOT RECOMMENDED FOR PUBLICATION**
File Name: 12a1131n.06

**No. 11-5611**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Nov 02, 2012*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| TERRY K. CASE, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

Before: SILER and COOK, Circuit Judges; STEEH, District Judge.[*]

**SILER**, Circuit Judge. Terry Case was convicted by a jury on eight counts of drug and firearm related crimes after a search of his home revealed various illegal drugs and firearms. He now appeals (1) the denial of his motion to suppress; (2) the sufficiency of evidence on a machine gun charge; and (3) his sentence. For the following reasons, we **AFFIRM**.

**I.**

In April 2006, Detective Brad Depew of the Hawkins County Sheriff's Department authored a warrant affidavit and obtained a state warrant to search Case's residence for marijuana, morphine, other drugs, and paraphernalia. When officers executed the search warrant that same day, they recovered numerous drugs and firearms, including a machine gun. Depew also discovered income tax returns illustrating Case's annual income to be less than $10,000. Based on this information and

---

[*]The Honorable George Caram Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

his knowledge that "a lot of drug dealers take [items] on trade for [] narcotics," he suspected that many other items of personal property in the residence likely represented proceeds from drug sales. Accordingly, officers then seized numerous items of personal property. Depew returned the executed warrant, listing all of the items seized. The items of personal property were included as part of the returned warrant but were separately listed from the drugs, paraphernalia, and firearms.

The following day, Depew provided Case with a seizure notice pursuant to a state forfeiture statute, listing all of the personal property confiscated during the search. Depew appeared a few days later before General Sessions Judge Brand for a probable cause hearing. Judge Brand found probable cause for the items seized and signed the forfeiture warrant. Case received notice of the forfeiture and filed a bond for a hearing to dispute the seizure, but later decided not to appear and waived his right to appeal the forfeiture.

Depew proposed to Case that, in exchange for substantial cooperation with outstanding cases and acceptance of a plea deal on state criminal charges, he would not refer charges stemming from possession of the machine gun to the federal authorities for prosecution. Case was released on bond and he arranged a monitored drug transaction with two drug suppliers. He notified state officers of the purchase, who planned to arrest the suppliers while en route to Case's residence. Upon stopping the vehicle on the highway, one suspect fled, and officers were able to arrest only one person. Charges against that suspect were later dismissed because of an improperly executed search warrant.

Case was indicted later in federal court on nine counts of drug and firearm related federal crimes: possession with intent to distribute cocaine, marijuana, and hydrocodone in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and (b)(1)(D) (Counts One, Two, and Three); possession of

methamphetamine in violation of 21 U.S.C. § 844(a) (Count Four); possession of fifteen firearms in furtherance of drug trafficking (Count Five); possession of a machine gun in furtherance of drug trafficking in violation 18 U.S.C. § 924(c)(1)(B)(ii) (Count Six); possession of firearms as a user of controlled substances in violation of 18 U.S.C. § 922(g)(3) and 924(a)(2) (Count Seven); improper storage of explosive material in violation of 18 U.S.C. §§ 842(j) and 844(b) (Count Eight); and possession of a machine gun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2) (Count Nine).

Although the parties dispute the contents of their enusing negotiations, Case maintains that he sought a promise from the United States that it would move for a thirty-percent downward departure at his sentencing. In return, the United States demanded, at the very least, substantial cooperation in ongoing investigations. Case claims that he continued providing Depew with information relating to other suspects and drug operations while he negotiated with the United States.

Case's attorney, John T. Milburn Rogers, met with Wayne Taylor, Assistant United States Attorney ("AUSA"). During that discussion, Rogers recalls asking, in jest, if the United States planned to file a motion for downward departure based upon Case's previous assistance with state investigations. According to Rogers, AUSA Taylor responded that he did, but the parties never memorialized an agreement in writing.

Meanwhile, Case moved to suppress evidence of the items seized from his home. The district court denied Case's motion to suppress, finding that the warrant was supported by probable cause, and that the personal items, although outside the scope of the warrant, were properly seized pursuant to the state forfeiture statute.

At trial, the jury returned a guilty verdict on all but one count (Count Eight) of the indictment. Between the trial and sentencing, Case moved to compel the United States to file a USSG § 5K1.1 motion for a downward departure from the advisory sentencing range. The district court conducted a hearing to determine whether an agreement existed between the parties and, if so, whether the United States's decision not to file a § 5K1.1 motion was based on Case's exercising his right to a trial by jury. Rogers testified at the hearing that the United States offered a plea agreement whereby it would recommend a thirty-percent downward departure in exchange for Case's substantial cooperation and guilty plea. When asked if Case ever received or signed a plea agreement, Rogers stated that the parties never "got that far."

The district court found that although Case had cooperated with officers, he failed to show that an agreement based solely on his cooperation existed between the parties. It also found that the United States promised to recommend a thirty-percent downward departure only in the context of plea negotiations. Finally, the district court found there was insufficient evidence to establish that AUSA Taylor promised to move for a downward departure during his meeting with Rogers.

## II.

### A.  Motion to Suppress.

When reviewing a district court's denial of a motion to suppress, we review findings of facts for clear error and conclusions of law *de novo*. *United States v. Hurst*, 228 F.3d 751, 756 (6th Cir. 2000).

Case argues that officers flagrantly disregarded the scope of the search warrant when they seized numerous items of personal property from his residence. He contends that because the search

was so general, it violated his Fourth Amendment rights and all items seized should have been suppressed.

Tennessee Code Annotated § 53-11-451(a)(6)(A) states, in relevant part, that the following are subject to forfeiture:

> Everything of value furnished, or intended to be furnished, in exchange for a controlled substance . . . , all proceeds traceable to the exchange, and all moneys, negotiable instruments, and securities used, or intended to be used, to facilitate any violation of the Tennessee Drug Control Act.

Depew testified that during the search of Case's residence, he discovered income tax statements indicating that Case's annual income was less than $10,000. Depew believed that, based upon this income, many of the personal items found during the search likely were proceeds of drug sales. These items were seized and listed separately on the returned warrant, and Depew subsequently followed proper procedures of notifying Case of the personal items seized and obtaining a forfeiture warrant. Judge Brand later found probable cause for the seizures and signed the forfeiture warrant for the seized items. The district court correctly concluded that the personal items were properly seized pursuant to the forfeiture statute.

Because the personal items were properly seized, not pursuant to the search warrant, but pursuant to the forfeiture statute, Case's "flagrant disregard" argument fails. A valid search warrant becomes an impermissible general search when officers demonstrate a flagrant disregard for the limitations of the warrant. *United States v. Lambert*, 771 F.2d 83, 93 (6th Cir. 1985). Here, Case argues that the only items exceeding the limitations of the warrant are personal property such as tools, machinery, and automobiles. These items were not seized pursuant to the warrant, and they

therefore do not demonstrate a flagrant disregard thereof. Moreover, the remaining items seized pursuant to the warrant, *i.e.*, the drugs, paraphernalia, and firearms, clearly fall within the scope of "marijuana, morphine, other drugs, [and] paraphernalia" as listed on the search warrant. For these reasons, officers did not flagrantly disregard the warrant, and Case's motion to suppress was properly denied.

**B. Sufficiency of the Evidence.**

Case challenges the jury's finding that his possession of a machine gun was in furtherance of drug trafficking. When reviewing the sufficiency of evidence to support a jury's verdict, we consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Title 18 of the United States Code, Section 924(c)(1)(B)(ii) criminalizes the possession of a machine gun in furtherance of a drug trafficking crime. To sustain a conviction on this charge, a weapon must be found to "promote or facilitate the crime." *United States v. Mackey*, 265 F.3d 457, 460-61 (6th Cir. 2001). As such, it "must be strategically located so that it is quickly and easily available for use." *Id*. at 462 (citing *United States v. Feliz-Cordero*, 859 F.2d 250, 254 (2d Cir. 1988)). Relevant factors in this analysis include "whether the gun was loaded, the type of weapon, the legality of its possession, the type of drug activity conducted, and the time and circumstances under which the firearm was found." *Id*. (citing *United States v. Ceballos-Torres*, 218 F.3d 409, 414-15 (5th Cir. 2000)).

Ample evidence supported the jury's finding that Case possessed the machine gun in furtherance of drug trafficking. First, as to the specific factors this court may analyze, the machine gun was illegally possessed and was found with a fully loaded magazine. Although the gun and magazine were wrapped in a blanket in Case's attic, a built-in ladder was attached to the attic door, allowing for convenient access to the space. Multiple footprints were visible on the ladder, which supported the conclusion that it was frequently used. Finally, drugs were stored in the attic within close proximity to the machine gun, which could indicate that possession of the weapon was related to drug trafficking. For these reasons, the evidence introduced at trial was sufficient to support the jury's verdict.

**C. Sentencing.**

We review the district court's factual determination of the content of the parties' agreement for clear error, *United States v. Lukse*, 286 F.3d 906, 909 (6th Cir. 2002), and the determination of whether the United States violated that agreement *de novo*. *United States v. Wells*, 211 F.3d 988, 995 (6th Cir. 2000).

The issue raised in this case is whether the prosecution refused to file a § 5K1.1 motion to punish Case for exercising his right to a trial by jury. "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort . . . ." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978). "But in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." *Id*. Therefore, "[w]hile confronting a defendant with the risk of more severe punishment clearly may have a discouraging effect on the defendant's assertion of his trial

rights, the imposition of these difficult choices is an inevitable–and permissible–attribute of any legitimate system which tolerates and encourages the negotiation of pleas." *Id*. at 364 (citation alteration and internal quotation marks omitted).

Case argued before the district court that the parties had reached an agreement whereby he would provide assistance with investigations and, in exchange, the United States would recommend a thirty-percent reduction of his sentence. The question is whether the district court's finding that no agreement was reached was clearly erroneous. Case did cooperate with the government by arranging a drug transaction and providing information regarding other investigations. However, there are many inexplicable features of the agreement as he describes it. First, even assuming that the United States would agree to move for a downward departure without reaching a plea agreement, it remains puzzling that it would do so based solely on previous cooperation with state law enforcement officers. The primary extent of Case's cooperation occurred before he was indicted in federal court. The district court reasonably questioned the extent of any agreement on behalf of the United States based on this cooperation.

Furthermore, if Case's obligations were fulfilled and the United States was bound by its agreement to file a § 5K1.1 motion, why did Case hesitate in accepting the plea agreement? Rogers recalls that Case asked for time to consider the plea agreement and ultimately rejected it because he wished to proceed to trial. Rogers testified that at this point in the negotiations, he believed that the parties' initial agreement still stood. Accepting Rogers's explanation as true, it is difficult to understand why Case was still negotiating at this time. Because the facts, as alleged by Case, leave open the likelihood that the parties never reached a final and enforceable agreement, the district

court's finding that no agreement was reached was not clearly erroneous.  Absent an agreement

between the parties, the district court properly denied Case's motion to compel the United States to

move for a downward departure at his sentencing.

**AFFIRMED.**