**UNITED STATES of America, Appellee,**

v.

**Jose PIMENTEL, Defendant–Appellant.**

**No. 1119, Docket 95–1555.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 23, 1996.

Decided May 8, 1996.

Alexandra A.E. Shapiro, Assistant United States Attorney, New York City (Mary Jo White, United States Attorney for the Southern District of New York, Steven M. Cohen and Ira M. Feinberg, Assistant United States Attorneys, New York City, on the brief), for Appellee.

Philip L. Weinstein, New York City (The Legal Aid Society, Federal Defender Divi-

sion, Appeals Bureau, New York City, on the brief), for Defendant–Appellant.

Before: NEWMAN, Chief Judge, KEARSE, Circuit Judge, and BURNS, District Judge *.

KEARSE, Circuit Judge:

Defendant Jose Pimentel appeals from a judgment entered in the United States District Court for the Southern District of New York after a jury trial before Robert P. Patterson, Jr., *Judge,* convicting him of conspiracy to traffic in narcotics, in violation of 21 U.S.C. § 846 (1994); distribution of, and possession with intent to distribute, narcotics, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (1994); and possession and use of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c) and 2 (1994). He was sentenced principally to 10 years' imprisonment, to be followed by four years' supervised release. On appeal, Pimentel contends that the evidence was insufficient to support his conviction on the firearm count and that the trial court's instructions to the jury on that count were erroneous. For the reasons that follow, we affirm.

## I. BACKGROUND

The present prosecution arose from an investigation into a Bronx, New York heroin distribution organization headed by one Rafael Cruz. The evidence at trial included testimony by law enforcement agents and by coconspirator Rafael Morell, a seller and manager in the Cruz organization. Taken in the light most favorable to the government, the evidence showed the following.

The Cruz organization sold heroin principally at 550 East 139th Street ("139th Street"); its inventory was stored in several locations, including an apartment building called Oak Terrace. The organization used a Chrysler automobile to transport drugs from Oak Terrace to 139th Street, secreting them in a compartment located on the back of the front passenger seat. The compartment

could be opened by pressing the rear defogger button on the car's dashboard plus a button by the door on the driver's side of the car. In the compartment, which opened toward the back seat of the car, were kept drugs, money, and a gun. Morell testified that the gun "was used to protect the drugs."

As a co-manager of the operation, Morell had responsibility for overseeing sales, inventory, and security workers. In early 1994, Cruz instructed Morell to train Pimentel to succeed Morell as a manager because Morell, having recently been arrested for drug-related conduct, was too conspicuous. Accordingly, in March, Morell began training Pimentel daily, instructing him about the drug business, the Chrysler's secret compartment, and the presence in that compartment of drugs and a gun. On one or two occasions during this period, Pimentel took heroin from a storage location to the point of sale; at other times, he helped to supervise the workers. He was in the Chrysler once or twice, though apparently never alone.

On the evening of April 28, 1994, Morell found prospective customers at 139th Street and telephoned organization co-manager Robinson Berroa at Oak Terrace, asking Berroa to bring heroin. Berroa drove the Chrysler to 139th Street; Pimentel accompanied him, sitting in the front passenger seat. When they arrived, Morell received money from a customer, got in the car, and had Berroa open the compartment. Morell put the money into the compartment and took out drugs which he gave to the customer.

After Morell repeated this process with another customer, Morell, Berroa, and Pimentel drove off in the Chrysler. As they returned to Oak Terrace, they were arrested by agents of the Drug Enforcement Administration. A subsequent search of the car revealed the secret compartment. In it were found 14 grams of heroin, approximately $7,400, and a .38 caliber gun containing four rounds of ammunition.

Pimentel and Morell were indicted on the narcotics counts described above, and were

---

* Honorable Ellen Bree Burns, of the United States District Court for the District of Connecticut, sitting by designation.

charged with using and carrying a firearm in connection with their narcotics trafficking, in violation of 18 U.S.C. §§ 924(c) and 2. Morell pleaded guilty and testified for the government at the trial of Pimentel. The jury found Pimentel guilty on all counts, and he was sentenced as described above.

## II.   DISCUSSION

On this appeal, Pimentel does not challenge his convictions on the narcotics counts, but he makes two challenges to his conviction on the firearm count. First, he contends that the firearm count should be dismissed because the evidence was insufficient to show that he used or carried the gun found in the Chrysler because it was not accessible to him; second, he contends that even if the evidence was sufficient, he should have a new trial on that count because the court's instructions to the jury were erroneous. For the reasons that follow, we find no basis for relief.

### A.   Sufficiency of the Evidence of "Carrying"

■■■ To the extent pertinent here, § 924(c) provides for a five-year term of imprisonment for any person who "during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm." 18 U.S.C. § 924(c)(1). Although until recently this Court had interpreted the "use" prong of § 924(c) to encompass the strategic placement of a gun in a narcotics trafficking location where it could reasonably be inferred that the defendant kept the gun on hand for use, if necessary, in connection with a drug transaction, see generally United States v. Giraldo, 80 F.3d 667 (2d Cir. 1996) (discussing cases), the Supreme Court in December 1995 ruled in Bailey v. United States, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) ("Bailey"), that the term "use" in § 924(c) means the "active employment" of the gun in some way, id. at ——, 116 S.Ct. at 505 (emphasis in original), and that "[i]f the gun is not disclosed or mentioned by the offender, it is not actively employed, and it is not 'used,'" id. at ——, 116 S.Ct. at 508. The government concedes that, in light of

Bailey, there was insufficient evidence to convict Pimentel of "using" the gun.

■■■ Pimentel also argues that, from his position in the front passenger seat of the car, he could not open the compartment or reach inside to get the gun and that there was thus insufficient evidence to convict him under the "carrying" prong of § 924(c). Whether or not Pimentel himself could open the compartment or reach the gun, however, the evidence was ample to convict him of carrying the gun on a Pinkerton theory of liability, see Pinkerton v. United States, 328 U.S. 640, 646–48, 66 S.Ct. 1180, 1183–85, 90 L.Ed. 1489 (1946). Under Pinkerton, a coconspirator who does not directly commit a substantive offense may be liable for that offense if it was committed by another coconspirator in furtherance of the conspiracy and was a reasonably foreseeable consequence of the conspiratorial agreement. In United States v. Giraldo, we held that a defendant had committed the substantive offense of carrying a firearm within the meaning of § 924(c) when he drove to the site of a planned narcotics transaction with a gun concealed in a compartment in the car, the compartment was easily accessible to him from the driver's seat, and there was evidence from which it could be inferred that he had knowledge of the car's contents. See 80 F.3d at 678.

In the present case, the gun was in the secret compartment of the Chrysler as it was driven on the evening of April 28 to 139th Street by Berroa, with Pimentel in the front passenger seat. Morell's testimony was easily sufficient to establish that Pimentel had become a member of the Cruz narcotics conspiracy, of which Morell and Berroa were also members; that the gun was routinely kept in the compartment with the money and drugs for the purpose of protecting the drugs; that on the evening in question, Morell, Berroa, and Pimentel all had reason to believe that the gun was in the compartment; and that Morell and Berroa had collaborative access to the gun, as Berroa opened the compartment, which was directly in front of Morell as he sat in the back seat and removed drugs from the compartment. Accordingly, the jury could properly find that at

least Berroa and Morell "carried" the gun during and in relation to a drug transaction.

■ Further, given Morell's training of Pimentel, which included instruction on the presence of narcotics and the gun in the compartment, the jury could also easily infer that the transport of the gun on April 28 in connection with the sale of narcotics was foreseeable to Pimentel. Indeed, following his arrest, Pimentel admitted that he had been in the Chrysler for some time that evening and that he was aware that there was a gun in the car.

The jury was properly instructed on the *Pinkerton* theory of liability, and we conclude that, on that theory, the evidence was ample to support Pimentel's conviction of carrying a firearm in violation of § 924(c).

### B. *The Trial Court's Other Instructions*

■ Pimentel contends that even if the evidence was sufficient, he is entitled to a new trial on the § 924(c) count because the court's instructions to the jury as to what the government was required to prove to establish "use" of a firearm within the meaning of that section were erroneous in light of *Bailey*. Though the instructions were flawed in light of *Bailey*, harmless-error analysis applies, *see generally United States v. Giraldo*, 80 F.3d at 678, and we find no basis for reversal.

In connection with the § 924(c) count, the court instructed the jury, in pertinent part, as follows:

> [I]n order for the government to sustain its burden of proof that the defendant used or carried a firearm, it is not necessary for the government to prove that the defendant actually carried the firearm on his person. It is sufficient if you find that the defendant transported or conveyed a firearm or had possession of it in the sense that, at a given time, he had both the power and the intention to exercise control over it either directly or through others.
>
> Further, the government need not prove that the firearm was fired, brandished, or even displayed. It is sufficient if the proof establishes that the firearm furthered the commission of the drug trafficking crime

or crimes, or was an integral part of the underlying crime being committed.

> . . . .
>
> ... [I]f you find that the government has proven beyond a reasonable doubt that the defendant had possession of the firearm alone or with others in a place where heroin or heroin proceeds were stored, packaged, or distributed in order to enable drug traffickers to protect heroin or proceeds of heroin sales, then you should find that element in favor of the government.

(Trial Transcript at 315–16.)

■ These instructions are flawed, first, in that they conflate the offenses of using and carrying. Further, insofar as the instruction that the jury could convict even if the gun had not been "fired, brandished, or even displayed" referred to the "use" prong of § 924(c), it was, on the record in this case (which included no evidence that, in connection with the drug transactions, the gun was mentioned to any nonmember of the conspiracy), erroneous in light of *Bailey*. However, as noted above, the court's instructions never expressly distinguished between the concepts of use and carrying.

■ Even if we view the instruction as treating these concepts separately, any error was harmless. As to the "carrying" prong, the only "carrying" that a rational jury could possibly have found was the act of transporting the gun in the compartment on the back of the front passenger seat. To the extent that the jury was advised that it could convict Pimentel of "carrying" even if the gun had not been fired, brandished, or displayed, the instruction was not incorrect, because a gun can be "carried" within the meaning of § 924(c) when it is concealed in a location that is immediately accessible to a perpetrator of a drug offense. While the court's "carrying" instruction did not mention a requirement of immediate accessibility *in haec verba*, that concept was adequately communicated by the court's accompanying explanation that a defendant could be found to have "transported," "conveyed," or "possess[ed]" the gun only if he had, *inter alia*, the "power ... to exercise control over" it. In sum, read as a whole, the instructions adequately

**60**

informed the jury of what it needed to find in order to conclude that Pimentel had "carried" the gun in violation of § 924(c).

Although as an instruction on "using," the court's language lacked the active-employment connotations required by *Bailey,* we conclude that the error was harmless because. the language that was flawed with respect to "using" properly described "carrying," and the evidence was ample to support a finding of carrying. (We need not decide whether the error would have been harmless if the gun had been located elsewhere—for example in the trunk of the car, while the narcotics and cash were in the passenger compartment—a variation that could raise a question as to whether the evidence was sufficient to permit a conviction even for "carrying.") The Supreme Court has instructed that courts may examine an erroneous instruction in light of other instructions and the evidence to determine what findings the jury necessarily made and whether such findings are the "functional equivalent" of required findings. *See Sullivan v. Louisiana,* 508 U.S. 275, 280, 113 S.Ct. 2078, 2082, 124 L.Ed.2d 182 (1993); *Carella v. California,* 491 U.S. 263, 271, 109 S.Ct. 2419, 2423, 105 L.Ed.2d 218 (1989) (Scalia, J., concurring in judgment). In the present case, even if the jury may have thought it was finding Pimentel guilty of "using," the fact that the instruction with respect to "using" properly described "carrying" made the jury's verdict the functional equivalent of a finding of "carrying."

This equivalence distinguishes the present case from *United States v. Garcia,* 992 F.2d 409 (2d Cir.1993), in which we stated that if any of the disjunctive theories presented to the jury was "legally insufficient, then the verdict must be reversed," *id.* at 416. In *Garcia,* we were concerned with instructions that were legally insufficient in the sense that two of the three theories presented to the jury did not, in light of a subsequent Supreme Court decision, describe an offense under the statute at issue. If, under the court's instructions, a jury could have returned its verdict of guilty on the basis of acts that do not constitute a criminal offense, the conviction ordinarily must be vacated because there is no assurance that the error was harmless. In the present case, in contrast to *Garcia,* the district court's instruction, though improperly broad with respect to the "using" prong of § 924(c), adequately described the offense of "carrying" under the same section. The jury's verdict of guilty on the § 924(c) count, therefore, necessarily meant that the jury found facts that constituted the offense of "carrying" within the meaning of that provision. We thus have no doubt that the error was harmless and that no new trial is required.

## CONCLUSION

We have considered all of Pimentel's contentions on this appeal and, for the foregoing reasons, have found in them no basis for reversal or a new trial.

We note that the judgment entered in the district court stated that Pimentel was convicted of use and "possession" of a firearm in violation of § 924(c), rather than use and carrying. The indictment properly charged Pimentel with use and carrying, *i.e.,* the acts prohibited by that section; and the trial court instructed the jury as to use and carrying. As indicated above, we affirm Pimentel's conviction for "carrying," and we direct the district court to enter a revised judgment in conformity herewith.

As thus modified, the judgment of conviction is affirmed.