George Kenneth HARNEY, Petitioner,

v.

UNITED STATES of America,
Respondent.

David Thomas CHALEUX–
DeLEON, Petitioner,

v.

UNITED STATES of America,
Respondent.

No. 97–CV–172(FJS).

United States District Court,
N.D. New York.

April 28, 1997.

George K. Harney, USP Allenwood, White Deer, PA, pro se.

David T. Chaleux–DeLeon, USP Allenwood, White Deer, PA, pro se.

Thomas J. Maroney, United States Attorney, N.D.N.Y., Kimberly M. Zimmer, Assistant U.S. Attorney, Syracuse, NY, for Respondent.

## MEMORANDUM–DECISION and ORDER

SCULLIN, District Judge.

### Introduction

Petitioners, George K. Harney and David T. Chaleux–DeLeon, seek to vacate their sentences pursuant to 28 U.S.C. § 2255, based upon the Supreme Court's decision in *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Petitioner Harney also seeks the appointment of counsel. Following a joint trial, Petitioner Harney and Chaleux–DeLeon were convicted of, inter alia, conspiracy to commit armed robbery, and "using" or "carrying" a firearm during and in relation to that conspiracy in violation of 18 U.S.C. § 371 and 18 U.S.C. § 924(c)(1), respectively. Petitioners contend that the evidence adduced at their criminal trial was insufficient to support their convictions for "using or carrying" a firearm during and in relation to the underlying conspiracy to commit armed robbery, in light of the Supreme Court's re-definition of "use" in *Bailey.*

### Factual Background

At the underlying criminal trial, testimony was presented by the Government which recounted the following factual events. In late March or early April 1992, Ronald LeClair of Springfield, Massachusetts called Peter Manfredi of Whitehall, New York to discuss the possibility of robbing a bank in Whitehall. LeClair told Manfredi that he knew people interested in coming from Springfield to Whitehall to rob banks. During a later telephone conversation, LeClair introduced Manfredi to Petitioner Chaleux–DeLeon who indicated that he was interested in coming to Whitehall, New York to rob banks.

On April 13, 1992, Petitioner Harney, along with Petitioner Chaleux–DeLeon, met Manfredi in Whitehall, New York at a *Stewart's* store. At this first meeting, Petitioners showed Manfredi the guns they were each wearing under their coats. Thereafter, Harney, Chaleux–DeLeon, and Manfredi conducted an initial surveil of the Whitehall Police Station and the two banks in Whitehall, Key Bank and Troy Savings Bank, on their way to Manfredi's house. Once they reached Manfredi's house the Petitioners brought three pistols, ammunition, belly bands, and clothes into the house and stored them in a dresser

That evening, the Petitioners discussed robbing banks with Manfredi. The parties agreed that at least three individuals would be needed and that the first person to enter the bank would "smash the teller's head" in order to confuse and scare others in the bank. They further agreed that if anyone in the bank moved, they would "shoot them in the head."

On April 14, 1992, the three went to the Whitehall Grand Union and Troy Savings Banks in order to assess their security systems, cameras, and to generally see how easily each could be robbed. They agreed that Troy Savings Bank would be less difficult to rob because of its location and accessibility. Later that day, Petitioners Harney and Chaleux–DeLeon returned to Massachusetts to recruit more people for the robbery.

After they left, Manfredi went to the Whitehall Police Department to inform the police of their plan and to surrender the guns left by the Petitioners. Upon their return to Whitehall on April 15, 1992, Petitioner Harney and Chaleux–DeLeon were arrested by F.B.I. agents.

After a five day trial, Petitioner Harney and Chaleux–DeLeon were convicted on August 21, 1992 of conspiracy to commit armed robbery in violation of 18 U.S.C. § 371 (count one), using or carrying firearms during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c) (count three), interstate transportation of a stolen firearm in violation

of 18 U.S.C. § 922(i) (count four), and interstate transportation of a firearm with an obliterated or altered serial number in violation of 18 U.S.C. § 922(k) (count five).[1] Petitioner Harney was sentenced to 46 months imprisonment on counts one, four and five to run concurrently, and 60 months imprisonment on count three to run consecutively, for a total of 106 months. Petitioner Chaleux–DeLeon was sentenced to 60 months imprisonment on count one and 71 months imprisonment on counts four through seven to run concurrently with count one, and 60 months imprisonment on count three to run consecutively with the 71 month sentence, for a total of 131 months.

### Discussion

As stated, Petitioners contend that their 18 U.S.C. § 924(c) convictions must be vacated in light of the Supreme Court's *Bailey* decision because there is insufficient evidence to support a conviction for "using" or "carrying" a firearm. Petitioner Harney also requests appointment of counsel pursuant to 18 U.S.C. § 3006A(a)(2)(B). The Court will first address Petitioner's request for counsel.

### I. Appointment of Counsel

 In determining whether to appoint counsel to an indigent litigant, a court needs to consider the following factors: (1) the merits of the litigant's claims, (2) the litigant's ability to pay for private counsel, (3) the litigant's efforts to obtain counsel, (4) the availability of counsel, (5) the litigant's ability to gather facts without the assistance of counsel, (6) the complexity of the legal issues, and (7) the need for expertly conducted cross-examination. *Garcia v. Keane*, 1997 WL 124073 at *2 (S.D.N.Y., March 18, 1997) (citing *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir.1989)). Having reviewed the relevant legal arguments and issues present in this matter, the Court finds that the legal questions are straightforward, and have been adequately briefed by the Petitioners. Furthermore, there is no need for expertly conducted cross examination because the relevant inquiry turns on the evidence present in the record of the underlying criminal trial.

Accordingly, the Court denies Petitioner Harney's request for the appointment of counsel.

### II. Petitioners' *Bailey* Challenge

Turning now to the Petitioners' *Bailey* argument, Petitioners first contend that the jury instruction given by the Court at their criminal trial concerning the meaning of "use or carrying" for purposes of a violation of 18 U.S.C. § 924(c)(1) was erroneous in light of the Supreme Court's decision in *Bailey v. United States*. Petitioners further contend that the error was not harmless because the evidence presented at trial was insufficient to support a conviction for using or carrying. Petitioners argue that although there was evidence that they were carrying firearms on their person when they arrived in Whitehall on April 13, 1992, there was no evidence of a conspiracy to commit armed robbery until noon on April 14, after the guns had been stored in the dresser at Peter Manfredi's house. Petitioners posit that since the predicate felony, i.e., the conspiracy, did not begin until after the firearms at issue had been stored in a dresser, no rational juror could find that the Petitioners "used or carried" the firearms "during or in relation to" the predicate felony.

#### 1. Erroneous Jury Instruction

 As stated, Petitioners first contend that the jury instruction given at their trial was erroneous in light of the Supreme Court's decision in *Bailey*. Where a criminal conviction is founded on an erroneous jury instruction, if the reviewing court is unable to determine whether the verdict rested on a legally deficient theory, the conviction must be vacated. *United States v. Melendez*, 90 F.3d 18, 21 (2d Cir.1996). Where, however, such an error is harmless, the conviction should stand. *See, e.g, United States v. Vasquez*, 85 F.3d 59, 61 (2d Cir.1996). In *Bailey*, the Supreme Court significantly narrowed the definition of firearm "use" for purposes of finding a violation of § 924(c)(1). —— U.S. at ——, 116 S.Ct. at 506. The Court held that "use" necessarily

---

1. Additionally, Petitioner Chaleux–DeLeon was convicted of two counts of transportation of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Counts Six and Seven).

requires some "active employment of the firearm" during the offense in question. *Id.*[2]

The Second Circuit has held that when a jury instruction on § 924(c)(1) is found to be erroneous under *Bailey,* it is harmless "where it could be said, based on consideration of the entire jury charge and the evidence, that the jury's finding of a § 924(c) violation was the 'functional equivalent' of finding that the firearm had been unlawfully carried." *Id.* (citing *United States v. Pimentel,* 83 F.3d 55 (2d Cir.1996) (other citations omitted)). In the present case, the Government concedes that the jury instruction regarding § 924(c)(1), although proper under the then-existing law, is nevertheless erroneous in light of *Bailey.* However, the Government argues that even though the jury instruction may have been erroneous in its instructions on "use" due to *Bailey,* the error was harmless because the jury was also instructed on "carrying," and there was ample evidence introduced at trial to support a conviction on a "carrying" theory. Petitioners, on the other hand, contend that there was insufficient evidence to support a conviction under either the "use" or the "carry" provisions of § 924(c)(1).

### 2. Sufficiency of Evidence of "Carrying" Pursuant to § 924(c)(1)

Generally, a criminal conviction which is challenged based on insufficient evidence will only be reversed if, after viewing the evidence in the light most favorable to the government and drawing all inferences in the government's favor, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Gordils,* 982 F.2d 64, 70 (2d Cir.1992) (citations omitted). The crime at issue is a violation of section § 924(c)(1) of the United States Code which, in relevant part, imposes a five year minimum term of imprisonment for any person who "during and in relation to any crime of violence or drug trafficking crime … *uses* or *carries* a firearm." *United States v. Santos,* 84 F.3d

43, 45 (2d Cir.1996) (emphasis added). While *Bailey* significantly altered the pre-existing law with respect to the definition of "use," the law defining "carrying" is still largely intact. *See United States v. Giraldo,* 80 F.3d 667 (2d Cir.), *cert. denied,* —— U.S. ——, ——, 117 S.Ct. 135, 136, 136 L.Ed.2d 83 (1996); *Cruz–Rojas,* 101 F.3d at 285. In order to sustain a conviction pursuant to § 924(c)(1) for "carrying," the government must show that the firearm is within reach of the defendant during the commission of the underlying offense. *Cruz–Rojas,* 101 F.3d at 283 (citing *Feliz–Cordero,* 859 F.2d at 250).

As previously discussed, Petitioners' contention that there was insufficient evidence of "carrying" hinges on their argument that the evidence introduced at trial could only support a finding that the underlying conspiracy began on the afternoon of April 14, 1992, after the firearms were stored in Manfredi's dresser. The Petitioners made this exact same argument on appeal to the Second Circuit from their original criminal conviction. *United States v. Chaleux–DeLeon,* 92–CR–1642, 92–CR–1649, 992 F.2d 321 (2d Cir., Mar. 30, 1993) (unreported). The Second Circuit found then, as this Court does now, that "a rational jury could have found beyond a reasonable doubt that the conspiracy began no later than the time the defendants first decided to travel to Whitehall in order to rob a bank." *Id.* Since a rational jury could find the conspiracy began before or upon the Petitioners' arrival in Whitehall, the Court finds that there was ample evidence that the Petitioners "carded" firearms on their persons during and in relation to the conspiracy. Specifically, evidence was adduced at trial that upon the Petitioners' initial meeting with Peter Manfredi, they showed Manfredi firearms that they were wearing on their persons, which they also wore during their initial reconnoiter of the Whitehall Police Station and the two banks in Whitehall. Thus, based on this evidence, the Court finds that a rational juror could find that the Petitioners

---

**2.** Prior to *Bailey,* jury instructions in the Second Circuit reflected a much broader definition of "use" which required only that the jury find that it appeared that the possessor of the firearm intended to have it available for possible use

during the offense in question, or the firearm was "strategically located so as to be quickly and easily available for possible use during the [predicate felony]." *United States v. Feliz–Cordero,* 859 F.2d 250, 254 (2d Cir.1988).

"carried" the firearms in question "during and in relation to" the underlying conspiracy, supporting a conviction for a violation of 18 U.S.C. § 924(c)(1). Accordingly, the Court finds that any error in the jury instruction as to the definition of "use" was harmless, and the Petitioners' applications for Writs of Habeas Corpus are denied.

### Conclusion

Having considered the arguments of the Petitioners, the entire record, and the applicable law on the matter, the Court hereby denies the Petitioners' applications. Therefore it is hereby

ORDERED that Petitioner Harney's request for the appointment of counsel is DENIED. It is further

ORDERED that Petitioner Harney and Chaleux–DeLeon's motions to vacate their sentences are DENIED, and their Petitions are DISMISSED.

**IT IS SO ORDERED.**