**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Juan R. MUNOZ, a/k/a John Doe # 1, Defendant–Appellant.**

**No. 96–2797.**

United States Court of Appeals, Second Circuit.

Argued Feb. 10, 1998.

Decided April 22, 1998.

Andrew G. Tretter, New York City, (Robert S. Wolf, New York City, on the brief), for Defendant–Appellant.

John M. McEnany, Assistant United States Attorney, New York City (Mary Jo White, United States Attorney for the Southern District of New York, Timothy J. Coleman, Assistant United States Attorney, New York City, on the brief), for Plaintiff–Appellee.

Before: VAN GRAAFEILAND, JACOBS, and LAY,* Circuit Judges.

LAY, Circuit Judge:

Juan Munoz filed a 28 U.S.C. § 2255 motion to vacate his conviction for using and carrying a firearm during a drug transaction, in violation of 18 U.S.C. § 924(c)(1). Munoz challenged his conviction on two grounds: (1) the charge given to the jury regarding "use" under 18 U.S.C. § 924(c)(1) was erroneous in light of *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995); and (2) the evidence adduced at trial was insufficient to support his conviction on the firearm count. The district court denied relief, finding that the erroneous charge to the jury regarding "use" constituted harmless error

* Honorable Donald P. Lay, United States Circuit Judge for the Eighth Circuit, sitting by designa- tion.

and that there was sufficient evidence to support the conviction under the "carry" prong of § 924(c). We affirm.

## Background

On the morning of October 15, 1993, acting on a tip from a confidential informant, investigators from the New York Drug Enforcement Task Force observed Munoz driving a green Toyota Forerunner. That afternoon, the investigating officers began surveillance outside Munoz's apartment building. At approximately 8:20 p.m., Munoz returned to his apartment building, alone, in the green Forerunner. Munoz parked the Forerunner in the driveway and entered the building carrying a white plastic bag. Approximately thirty minutes later, Munoz and another man, later identified as William Hegie, exited the apartment building and approached a maroon Toyota Camry. Hegie, with Munoz standing next to him, placed something into the Camry's trunk, and removed from there a white plastic bag. Hegie, carrying the white plastic bag, and Munoz then re-entered the apartment building.

At approximately 10:15 p.m. the same evening, officers observed Munoz and Hegie exit the apartment building. Munoz got into a black Ford LTD and drove north on Hutchinson River Parkway; Hegie followed Munoz in the maroon Camry. After driving several blocks, Munoz and Hegie pulled over to the side of the road and exited their respective vehicles. The officers observed Hegie leaning under the hood of the maroon Camry while Munoz stood next to him. Munoz and Hegie then returned to their respective vehicles and drove in the direction of Munoz's residence.

Munoz returned to his residence in the black Ford LTD. Hegie continued to drive in the direction of Route 95. The officers pulled Hegie over and, with Hegie's consent, searched the maroon Camry. The officers found a brick-shaped package under the hood of the car that contained approximately one kilogram of cocaine. The officers then arrested Hegie.

The investigating officers resumed their surveillance of Munoz's residence at approximately 11:40 p.m. the same evening. At that time, the green Forerunner was not parked in the apartment building's driveway. At approximately 2:00 a.m. on October 16, 1993, officers observed Munoz return to the apartment building in the green Forerunner. The officers detained Munoz as he exited the vehicle and patted him down. The officers found a loaded magazine clip in Munoz's jacket pocket. With Munoz's consent, the officers searched the green Forerunner and found a .380 caliber handgun under the driver's seat. The magazine clip found in Munoz's jacket fit into the handgun. The officers also found a loaded .25 caliber pen gun under the floor mat on the driver's side of the car. The officers then arrested Munoz.

▆▆▆ The government indicted Munoz of conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(B); two counts of possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2; and one count of using *and* carrying a firearm during a drug transaction.[1] On May 17, 1994, a jury returned a verdict of guilty on all counts against Munoz. On January 31, 1995, the district court sentenced Munoz to concurrent 63–month terms of imprisonment for Counts One through Three, a consecutive term of five years imprisonment on Count Four and a four-year term of supervised release. This Court affirmed Munoz's conviction by summary order. *United States v.*

---

1. Count Four of the indictment charged Munoz, alone, with *using* and *carrying* a .357 caliber Smith & Wesson revolver, a .380 caliber Jennings semi-automatic handgun, and a .25 caliber pen gun, during and in relation to the drug trafficking offenses charged in Counts One through Three, in violation of 18 U.S.C. § 924(c). (our emphasis).

After Munoz's arrest, the officers obtained a telephonic search warrant and searched Munoz's apartment. In a hidden ceiling compartment, the officers found three plastic bags containing, in total, approximately 73 grams of cocaine, a triple beam scale typically used to weigh narcotics, a loaded .357 caliber Smith & Wesson revolver, and additional ammunition.

On this appeal, the government concedes that the Smith & Wesson revolver found in the hidden ceiling compartment cannot form the basis for a conviction under § 924(c) in light of *Bailey.*

*Munoz,* 122 F.3d 1057 (2d Cir.1995).[2]   After the Supreme Court issued its decision in *Bailey,* Munoz brought this § 2255 motion to vacate his conviction for the firearm offense under Count Four.[3]

## Discussion

I.  *Charge to Jury Regarding "Use" Under Section 924(c).*

■ Munoz contends this Court should vacate his conviction under § 924(c)(1) because the trial court's charge to the jury defining "use" was erroneous in light of *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995).  Section 924(c)(1), in relevant part, imposes a five-year term of imprisonment upon any person who "during and in relation to any ... drug trafficking crime ... uses or carries a firearm."   18 U.S.C. § 924(c)(1) (1997).   In *Bailey,* the Supreme Court ruled that the term "use" in § 924(c)(1) means "active employment" of a firearm by the defendant in a manner that makes the firearm "an operative factor in relation to the predicate offense."   *Bailey,* 516 U.S. at 143, 116 S.Ct. at 505.   We agree the district court's charge on "use" was erroneous in light of *Bailey.*  However, for the reasons stated below, we find the error to be harmless.

In defining "use" for the jury, the district court's charge stated, in part:

Now, I have to give you some matters of definition.  I think to simplify things I am going to ask you to look at the third line where it says, "did use and carry."  Ignore the word "carry."  I am simply going to instruct you about use.  The question is did the defendant use the firearms, or any of them, during and in relation to drug trafficking crimes.

\*      \*      \*·      \*      \*      \*

If someone has a weapon ready to fire or brandish, that is use within the meaning of the law, if they have it ready as a protection for their activities, as a precaution.  If it is in that way an integral part of their drug activity to protect themselves, to do something that a firearm would do, protect money, protect the transaction, protect the drugs or something of that nature, having a gun accessible for that purpose is, in the law, using that gun during and in relation to a drug trafficking crime.

So if it is in a room, it is in a vehicle, it's in a cabinet, if it's ready to be obtained and used in a more immediate sense, firing or threatening, then that is use within the meaning of the law.

\*      \*      \*      \*      \*      \*

Now, the government contends that the evidence shows that the .380 Jennings and the pen gun were in the defendant's car.  The question for you is were these guns present?  In fact, if you credit the government's evidence on that, and if so did the defendant have those guns in his car accessible so that he could use them in an immediate sense to fire or threaten in relation to a drug trafficking activity charged in the indictment?

(Tr. at 398–400).  This charge, as it defines "use" under § 924(c)(1), is flawed in light of *Bailey.*  Under this charge, the jury could have convicted Munoz of "using" the firearms in his vehicle even though Munoz never actively utilized the firearms.

However, even though the district court claimed to give the jury the legal definition of "use" in its charge, the charge adequately described the elements of "carrying" a firearm under § 924(c)(1), as set forth by this Court in *United States v. Canady,* 126 F.3d

---

**2.**  Munoz's sole challenge on direct appeal asserted error in the government's summation at trial in reference to Munoz's failure to call two witnesses.

**3.**  As this Court stated in *United States v. Canady,* 126 F.3d 352, 356 n. 1 (2d Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1092, 140 L.Ed.2d 148 (1998):

Collateral relief under § 2255 is appropriate when there has been an intervening change in

the substantive criminal law that establishes that the petitioner's conviction is based on conduct which is no longer regarded as criminal.  *See Davis v. United States,* 417 U.S. 333, 345–47, 94 S.Ct. 2298, 2304–06, 41 L.Ed.2d 109 (1974); *see, e.g., Ianniello v. United States,* 10 F.3d 59 (2d Cir.1993).  Because the decision in *Bailey* marks such a change, it is properly applied retroactively.

352 (2d Cir.1997). There, this Court stated that proof of a defendant's proximity to or accessibility of a firearm, though a necessary element for a finding of "carrying" under § 924(c)(1), is not alone sufficient to support a conviction. *Id.* at 358. Rather, "to uphold [the defendant's] conviction for 'carrying,' the evidence must [also] establish that, during and in relation to the drug trafficking crime, [the defendant] either (1) had physical possession of the firearm, as distinct from constructive possession, ... or (2) moved the firearm from one place to another." *Id.* In the present case, the district court's charge would have accurately described the requisite elements of "carrying" as defined in *Canady* if the trial court had used the term "carry" in place of "use" throughout most of the charge. *See United States v. Giraldo,* 80 F.3d 667, 678 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 135, 136 L.Ed.2d 83 (1996).

It is of no import that the district court told the jury in the charge to ignore the word "carry." The critical issue is whether the concept the district court conveyed to the jury, regardless of what it was called, accurately defined grounds upon which the jury could convict Munoz under § 924(c)(1). Since the charge accurately conveyed the requirements for finding Munoz had "carried" the firearms, it does not matter that the district court told the jury to ignore the word "carry." Thus, "even if the jury may have thought it was finding [the defendant] guilty of 'using,' the fact that the instruction with respect to 'using' properly described 'carrying' made the jury's verdict the functional equivalent of a finding of 'carrying.'"

4. Other circuits have similarly found sufficient evidence to support a § 924(c)(1) conviction under the "carrying" prong when the defendant, while driving a car, had easy access to a firearm stored inside the car. *See e.g., United States v. Brockington,* 849 F.2d 872, 874 (4th Cir.1988) (loaded pistol kept under the floormat beneath the defendant's seat); *United States v. Brown,* 102 F.3d 1390, 1401 (5th Cir.1996) (firearm in van while transporting drugs), *cert. denied,* —— U.S. ——, 117 S.Ct. 1455, 137 L.Ed.2d 559 (1997); *United States v. Fike,* 82 F.3d 1315, 1328 (5th Cir.1996) (firearm found in defendant's car and within reach during a drug transaction); *United States v. Myers,* 102 F.3d 227, 237 (6th Cir.1996) (firearm found under front seat of car), *cert. denied,* —— U.S. ——, 117 S.Ct. 1720, 137

*United States v. Pimentel,* 83 F.3d 55, 60 (2d Cir.1996).

■ Under the district court's charge in this case, the jury found the two firearms were present in Munoz's vehicle (Toyota Forerunner) and were readily accessible to Munoz during the ongoing conspiracy to distribute cocaine. These findings were sufficient to support a conviction under the "carrying" prong of § 924(c)(1). This Court has previously upheld a "carrying" conviction where a defendant, while in an automobile, had easy access to a firearm stored in the automobile during a drug trafficking crime. *See Giraldo,* 80 F.3d at 677 (defendant "carried" a firearm when he drove to the site of a planned narcotics transaction with a gun concealed in his car's central console beneath the change dish); *Pimentel,* 83 F.3d at 58–59 (defendant "carried" a firearm when he could access firearm stored in compartment on the back of the passenger seat by pressing rear defogger button and button on the driver's door); *United States v. Feliz–Cordero,* 859 F.2d 250, 253–54 (2d Cir.1988) (while overturning a "carrying" conviction, this Court indicated that a conviction would be upheld if the defendant who had possession of narcotics had a loaded gun under his seat in an automobile).[4] We therefore conclude the erroneous charge was harmless and affirm Munoz's conviction.

## II. *Sufficiency of the Evidence*

■ Munoz also contends the evidence adduced at trial was insufficient to support his conviction under § 924(c)(1) because the government failed to prove he possessed the

L.Ed.2d 843 (1997); *United States v. Riascos–Suarez,* 73 F.3d 616, 623 (6th Cir.) (firearm found protruding from driver's side console), *cert. denied,* —— U.S. ——, 117 S.Ct. 136, 136 L.Ed.2d 84 (1996); *United States v. Baker,* 78 F.3d 1241, 1247 (7th Cir.1996) (firearm transported in defendant's car and was within defendant's immediate reach), *cert. denied,* —— U.S. ——, 117 S.Ct. 1720, 137 L.Ed.2d 842 (1997); *United States v. Nelson,* 109 F.3d 1323, 1326 (8th Cir.1997) (revolver concealed under floormat behind the driver's seat); *United States v. Range,* 94 F.3d 614, 617 (11th Cir.1996) (firearm found under floormat of car); *United States v. Farris,* 77 F.3d 391, 395 (11th Cir.) (firearm found in glove compartment), *cert. denied,* —— U.S. ——, 117 S.Ct. 241, 136 L.Ed.2d 170 (1996).

firearms and the narcotics concurrently in the green Toyota Forerunner. By raising this claim, Munoz actually challenges the sufficiency of the evidence to support a finding that the firearms were carried "in relation to" the underlying drug trafficking charges, not the jury's finding that Munoz "used or carried" the firearms. *Bailey* did not alter our precedent defining the requisite showing to establish the "in relation to" element of § 924(c)(1).[5] The charge, as given, properly defined the law regarding the "in relation to" element of § 924(c)(1). Munoz had the opportunity to challenge the sufficiency of the evidence to support a finding of "in relation to" on direct appeal and failed to do so. The *Bailey* decision is irrelevant to this claim of insufficiency. Furthermore, absent a showing of cause for, and prejudice resulting from, the failure to raise this claim, Munoz may not now challenge the sufficiency of the evidence by collateral attack. A motion under § 2255 is not a substitute for an appeal. *See United States v. Pipitone,* 67 F.3d 34, 38 (2d Cir.1995) ("A party who fails to raise an issue on direct appeal and subsequently endeavors to litigate the issue via a § 2255 petition must 'show that there was cause for failing to raise the issue, and prejudice resulting therefrom.'" (*quoting Douglas v. United States,* 13 F.3d 43, 46 (2d Cir.1993))); *Billy–Eko v. United States,* 8 F.3d 111, 113–14 (2d Cir.1993) ("It is well-settled that where a petitioner does not bring a claim on direct appeal, he is barred from raising the claim in a subsequent § 2255 proceeding unless he can establish both cause for the procedural default and actual prejudice resulting

therefrom."). As Munoz has failed to show either cause for or prejudice resulting from this default, he cannot now seek appellate review of this issue.[6]

Judgment denying the motion to vacate the conviction is AFFIRMED.

VAN GRAAFEILAND, Circuit Judge, dissenting:

The district court's charge concerning unlawful use was improper under *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Therefore, under the requirements of due process, the jury was prohibited from convicting Munoz of violating 18 U.S.C. § 924(c) absent a court instruction on the remaining statutory element of unlawful carrying. Among the many authorities on this point, see the following:

*United States v. Gaudin,* 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444, 63 U.S.L.W. 4611, 4615 (1995)

> The Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged;

*Carella v. California,* 491 U.S. 263, 265, 109 S.Ct. 2419, 2420, 105 L.Ed.2d 218 (1989) (per curiam)

> The Due Process Clause of the Fourteenth Amendment denies States the power to deprive the accused of liberty unless the prosecution proves beyond a reasonable doubt every element of the charged offense. *In re Winship,* 397 U.S. 358, 364,

---

**5.** This Court has stated that "[u]se of a firearm 'in relation to' a drug trafficking crime requires the government to demonstrate a nexus between the firearm and the underlying drug trafficking crime." *United States v. Melendez,* 60 F.3d 41, 46 (2d Cir.1995), *citing Smith v. United States,* 508 U.S. 223, 237–38, 113 S.Ct. 2050, 2058–59, 124 L.Ed.2d 138 (1993). The firearm must have "some purpose or effect with respect to the drug trafficking crime." *Smith,* 508 U.S. at 238, 113 S.Ct. at 2059. Additionally, the proof must show that the firearm was an integral part of the underlying drug transaction and in some manner facilitated the transaction. *Melendez,* 60 F.3d at 46.

**6.** On direct appeal, in the usual challenge to the sufficiency of the evidence, the Government enjoys the benefit of every favorable inference. On

collateral attack, Munoz can prevail only if he meets "the higher burden [than even plain error] of showing that the error amounted to 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Napoli v. United States,* 32 F.3d 31, 36 (2d Cir.1994). It is no subversion of justice to deduce that when Munoz arrived at his home, where his coconspirator was waiting, carrying a white plastic bag, the Forerunner already contained one or both of the guns. It is possible that the bag contained grocery items or pet food, but it is no subversion of justice to deduce that it contained cocaine. Given the procedural posture of this case, we must assume that the Forerunner *did* contain the weapons at that time and that the bag *did* contain cocaine.

**638**

90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970). Jury instructions relieving States of this burden violate a defendant's due process rights. See *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985); *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Such directions subvert the presumption of innocence accorded to accused persons and also invade the truth-finding task assigned solely to juries in criminal cases;

*United States v. Howard,* 506 F.2d 1131, 1134 (2d Cir.1974)

As we said only last year:

"If justice is to be done in accordance with the rule of law, it is of paramount importance that the court's instructions be clear, accurate, complete and comprehensible, particularly with respect to the essential elements of the alleged crime that must be proved by the government beyond a reasonable doubt. . . ."

*United States v. Clark,* 475 F.2d 240, 248 (2d Cir.1973). *See also Byrd v. United States,* 119 U.S.App.D.C. 360, 342 F.2d 939 (1965). When Howard exercised his constitutional right to a jury, he put the Government to the burden of proving the elements of the crimes charged to a jury's satisfaction, not to ours or to the district judge's. Thus, even if we believe that there was overwhelming proof of the elements not charged, we must still reverse.

The district court not only failed to charge the jury on the "carrying" element; it instructed the jury to disregard it:

Now, I have to give you some matters of definition. I think to simplify things I am going to ask you to look at the third line where it says, "did use and carry." Ignore the word "carry." I am simply going to instruct you about use. The question is did the defendant use the firearms, or any of them, during and in relation to drug trafficking crimes.

Because of the great variety of definitions that can be applied to the term "carry," *see* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 343 (1971), we should exercise care to see that the term "carries," as used in 18 U.S.C. § 924(c)(1), is not interpreted in such

a manner that it becomes synonymous with the pre–*Bailey* definition of "use." Carrying is a separate offense and should be charged as such. This was done in *United States v. Pimentel,* 83 F.3d 55 (2d Cir.1996), *United States v. Giraldo,* 80 F.3d 667 (2d Cir.1996) and *United States v. Feliz–Cordero,* 859 F.2d 250 (2d Cir.1988), the cases on which my colleagues rely.