Carl KLINE, Petitioner,

v.

**UNITED STATES of America,**
**Respondent.**

Nos. 03–CV–0633 (ADS), 02–CV–6398.

United States District Court,
E.D. New York.

July 17, 2003.

Thomas F. Liotti, Garden City, NY, for Petitioner.

Roslynn R. Mauskopf, United States Attorney, Eastern District of New York by Leonard Lato, Assistant United States Attorney, Central Islip, NY, for Respondent.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The petitioner Carl Kline ("Kline") moves pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence arising from his 2002 conviction. For the reasons stated below, Kline's motion is denied.

On May 8, 2000, after months of surveillance, the Federal Bureau of Investigation ("FBI") arrested Kline and numerous co-defendants for racketeering and conspiring to extort Cherry's Video, an adult video store on Long Island. Kline worked under co-defendant Charles Carneglia, who was a member of the Gambino crime family. Kline approached Danny Melendez, owner of Cherry Video, and told him that he was involved in organized crime. Kline threatened harm to Melendez and to his business if Melendez did not agree to make regular payments to Kline.

After the initial contact between Melendez and Kline, Melendez contacted the FBI and agreed to cooperate with its investigation. Melendez frequently wore a "wire" to assist the FBI in recording conversations between him and Kline. "The recorded conversations reveal that a dispute arose between Kline and a member of the Bonanno crime family, Tommy DiFiore, over which 'family' had the right to extort Melendez." *United States v. Car-neglia,* 47 Fed. Appx. 27, 29–30, 2002 WL 31097569, at *1 (2d Cir.2002).

Eventually, Kline also agreed to cooperate with the FBI. Kline initially helped to record conversations between the organized crime members. However, he stopped cooperating in June 2000, approximately one month after his arrest. Although the FBI agents told Kline at the outset that his cooperation would be revealed to the other organized crime members, he stopped cooperating when the disclosure occurred. Kline claimed that he did not know that the FBI would identity him. On June 28, 2000, Kline and his previous attorney, James Pascarella, told FBI Special Agent David Edward that Kline no longer wished to cooperate. On April 18, 2001, Kline pleaded guilty to seven counts of Interference with Commerce by Threats or Violence (18 U.S.C. § 1951), in the United States District Court, Eastern District of New York (Mishler, J.). Prior to his sentencing, Kline discharged attorney Pascarella, and retained Anthony LaPinta, Esq., to represent him. On January 25, 2002, Judge Mishler sentenced Kline to 33 months imprisonment. Kline did not appeal from the sentence imposed.

On December 5, 2002, now represented by present counsel, Kline filed the instant motion, alleging that prior counsel provided ineffective assistance because he: (1) "fail[ed] to call key witnesses for trial or in a *Fatico* hearing" (see *United States v. Fatico,* 603 F.2d 1053 (2d Cir.1979), cert. denied, 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980)); and (2) "prevented [Kline] from testifying." Kline also contends that the "District Court failed to enforce the negotiated plea bargain," and that Fed.R.Civ.P. Rule 35(b) mandates a correction and reduction of his sentence. *Id.* Curiously, Kline re-filed the identical motion on February 7, 2003. Because the

motions are precisely the same, the Court will determine both motions in this decision.

### DISCUSSION

■ It is well settled that a Section 2255 motion is not a substitute for direct appeal. *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982); *United States v. Munoz*, 143 F.3d 632, 637 (2d Cir.1998). Accordingly, "Section 2255 claims not raised on direct review are procedurally barred unless they raise constitutional or jurisdictional claims, or result in a 'complete miscarriage of justice.'" *Johnson v. United States*, 313 F.3d 815, 817 (2d Cir.2002) (quoting *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir.1996)). A petitioner seeking to raise a claim in a Section 2255 motion that he did not raise on direct appeal must show "cause and prejudice" or a "fundamental miscarriage of justice" for his failure to do so. *Frady*, 456 U.S. at 167, 102 S.Ct. 1584 (citing *Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216(1973)); *Munoz*, 143 F.3d at 637.

■ One exception to this procedural default rule is for claims of ineffective assistance of counsel. Such claims may be brought in a Section 2255 proceeding whether or not the petitioner could have raised them on direct appeal. *Massaro v. United States*, —— U.S. ——, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003).

### A. As to the Ineffective Assistance of Counsel Claim

In order to prevail on an ineffective assistance of counsel claim, a petitioner must establish that his counsel performed deficiently and that the deficiency caused actual prejudice to his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002). Under the first prong, the court must "indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. The petitioner may prove the deficiency prong by establishing that his attorney's conduct fell "outside the wide range of professionally competent assistance," *id.* at 690, 104 S.Ct. 2052, and establish prejudice by showing a "reasonable probability" exists that, but for the deficiency, "the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. "A reasonable probability is one sufficient to undermine confidence in the outcome of the trial or appeal." *Dunham*, 313 F.3d at 730 (citing *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052). Also, the Second Circuit has instructed that a reviewing court should be "highly deferential" to counsel's performance, because "'it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.'" *Pratt v. Greiner*, 306 F.3d 1190, 1196 (2d Cir.2002) (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052).

Although the test for ineffective assistance of counsel contains two prongs, the Supreme Court specifically noted that the federal district courts need not address both components if a petitioner fails to establish either one. *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052. "In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.*

### (1) As to the Alleged Failure to Call Key Witnesses

■ Kline contends that his attorney "critically undermined [his] defense theory" by "unreasonably fail[ing] to contact or investigate critical, exculpatory witnesses."

Kline offers little argument or explanation for this claim. First, he did not state which attorney, James Pascarella or Anthony LaPinta, allegedly performed ineffectively. Next, Kline failed to identify what witnesses the attorney should have contacted or investigated, or what testimony these witnesses would have provided. Finally, Kline did not demonstrate that he suffered prejudice as a result of his attorney's alleged failure to explore these mystery witnesses. He presented no evidence that their testimony would have affected the outcome of the criminal charges against him. *See Rosario v. Bennett*, No. 01 CIV 7142, 2002 WL 31852827, at *33 (S.D.N.Y. Dec. 20, 2002) ("A petitioner may not merely allege that certain unidentified witnesses 'might' have supplied relevant testimony, but must state exactly what testimony they would have supplied and how such testimony would have changed the result.") (collecting cases). Accordingly, Kline's claim that counsel was ineffective for failure to investigate and present witnesses is denied.

### (2) As to the Alleged Prevention of Kline's Testimony

■ Kline asserts that defense counsel prevented him from testifying, in part by not fully advising him of his rights in that regard. Again, Kline makes vague allegations that are not sufficiently supported by his memorandum of law or the record. He does not allege which attorney allegedly prevented his testimony, or at what proceeding he wished to testify. Moreover, Kline does not state what testimony he would have given, and how this testimony may have changed the outcome of his case. *See Chang v. United States*, 250 F.3d 79, 84–85 (2d Cir.2001); *Brown v. Artuz*, 124 F.3d 73, 79–81 (2d Cir.1997); *United States v. Castillo*, 14 F.3d 802, 805 (2d Cir.), *cert. denied*, 513 U.S. 829, 115 S.Ct. 101, 130 L.Ed.2d 50 (1994). Kline chose to withdraw from his cooperation with the government and accept a plea bargain. Indeed, Kline could have received a lesser sentence, or perhaps probation, if he followed through with his cooperation. Kline's own choice to plead guilty does not render his counsel's performance ineffective. Accordingly, Kline's claim that counsel prevented his testimony is denied.

### (B) As to Kline's Remaining Issues

Kline also contends that the district court failed to enforce the "plea bargain," and that his sentence should be modified according to Federal Rule of Civil Procedure 35(b).

Kline did not file a direct appeal. As explained above, if a petitioner does not raise a claim on direct appeal, the Court cannot review it in a Section 2255 motion, absent cause and prejudice for the procedural default. Kline has not alleged cause or prejudice, nor has he shown that a fundamental miscarriage of justice will occur if the Court does not review his issues. Accordingly, Kline's claims with respect to his "plea bargain" and modification of his sentence are denied.

### CONCLUSION

For the foregoing reasons, Kline's Section 2255 motion to vacate, set aside or correct his sentence is DENIED.

Pursuant to Fed. R.App. P. 22(b) and 28 U.S.C. § 2253(c)(2), a certificate of appealability is denied, as Kline has not made a substantial showing of a denial of a constitutional right. *Miller–El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003); *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983); *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000).

The Clerk of the Court is directed to close both cases.

**SO ORDERED.**